```
 1  Mandana Jafarinejad - SBN 273904
 2  LAW OFFICES OF MANDANA JAFARINEJAD, P.C.
    1 Park Plaza
 3  Suite 600
    Irvine, CA 92614
 4  Telephone:  (949) 833-7125
 5
 6  Attorney for Defendants CHARLES D. BURRUS
    FAMILY TRUST d/b/a Mini Public Storage
 7
```

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| PUBLIC STORAGE,<br><br>    Plaintiff,<br><br>vs.<br><br>CHARLES D. BURRUS FAMILY TRUST d/b/a MINI PUBLIC STORAGE,<br><br>    Defendants. | Case No.  8:23-cv-01190-FWS-DFM<br><br>**DEFENDANT CHARLES D. BURRUS FAMILY TRUST D/B/A MINI PUBLIC STORAGE'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>[Statement of Uncontroverted Facts and Declarations of Benjamin Wells and Mandana Jafarinejad filed concurrently herewith]<br><br>Date:  October 3, 2024<br>Time:  10:00 a.m.<br>Courtroom: 10D<br><br>Complaint filed:  June 30, 2023<br>Trial date: December 17, 2024 |
|---|---|

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

  **PLEASE TAKE NOTICE** that, on October 3, 2024, at 10:00 a.m., or as soon thereafter as counsel may be heard, in Courtroom 10D of the United States District Court For The Central District Of California, located at Ronald Reagan Federal Building and United States Courthouse, 411 West Fourth Street, Santa Ana, California

92701, Defendant CHARLES D. BURRUS FAMILY TRUST d/b/a MINI PUBLIC STORAGE ("Defendant") will and hereby does move this Court for entry of summary judgment in its favor on the Complaint of Plaintiff PUBLIC STORAGE ("Plaintiff").

This motion is made pursuant to Rule 56 of the Federal Rules of Civil Procedure on the ground that there is no genuine dispute as to any material fact and Defendant is entitled to judgment on the Complaint as a matter of law.

This motion is made following the conference of counsel pursuant to Local Rule 7-3.

This motion is based on this notice, the attached Memorandum of Points and Authorities and Declaration of Benjamin Wells, the accompanying Separate Statement of Undisputed Facts, the papers and pleadings on file in this action, and such additional argument and evidence as may presented prior to or at the hearing of this matter.

Dated: August 22, 2024            LAW OFFICES OF MANDANA JAFARINEJAD, P.C.

*/s/ Mandana Jafarinejad*

_____
Mandana Jafarinejad
Attorneys for Defendant CHARLES D. BURRUS
FAMILY TRUST d/b/a MINI PUBLIC STORAGE

**DEFENDANT'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT**

# TABLE OF CONTENTS

| | | |
|---|---|---|
| I. | BACKGROUND INFORMATION | 1 |
| II. | STANDARD OF REVIEW | 1 |
| III. | ARGUMENT | 2 |
| | A. Plaintiff's Complaint is Time Barred by California's Applicable Statute of Limitations | 2 |
| | B. Plaintiff's Complaint is Time Barred by The Doctrine Of Laches | 5 |
| |    1. Plaintiff's Diligence in Enforcing the Mark | 6 |
| |    2. Harm to Senior User if Relief Denied | 7 |
| |    3. Good Faith Ignorance by Junior User | 8 |
| |    4. Competition Between Senior and Junior Users | 8 |
| |    5. Extent of Harm Suffered by Junior User Because Of Senior User's Delay | 9 |
| IV. | CONCLUSION | 10 |

## TABLE OF AUTHORITIES

**Cases**

*California Security Alarms v. Escobar's Security Plus Alarm Systems, Inc.*, 1996 WL 580841, *2 (N.D. Cal. 1996) .................................................................................. 2

*Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) ...................................................... 2

*Cleary v. News Corp.*, 30 F.3rd 1255, 1259 (9th Cir. 1994) ......................................... 2

*Danjaq LLC v. Sony Corp.*, 263 F.3d 942 (9th Cir. 2001) .........................................7, 9

*E-Sys., Inc v. Monitek, Inc.*, 720 F.3d 604, 607 (9th Cir. 1983) ..................................... 6

*GoTo.Com., Inc. v. Walt Disney Co.* (9th Cir. 2000) 202 F.3d 1199, 1209 .................. 5

*Hot Wax, Inc. v. Turtle Wax*, Inc. (7th Cir. 1999) 191 F.3d 813, 821 ........................7,9

*Jarrow Formulas, Inc. v. Nutrition Now, Inc.* (9th Cir. 2002) 304 F.3d 829, 836 .....2, 5

*Karl Storz Endoscopy America v. Surgical Tech.* (9th Cir. 2002) 285 F.3d 848, 857 .. 3

*Kason Industries v. Component Hardware Group* (11th Cir. 1997) 120 F.3d 1199, 1203 ........................................................................................................................ 5

*La Quinta Worldwide LLS v. Q.R.T.M., S.A. de C.V.*, 762 F.3d 867, 878 (9th Cir. 2014) ...............................................................................................................5, 6, 7

*Lyons Partnership, L.P. v. Morris Costumes, Inc.* (4th Cir. 2001) 243 F.3d 789, 797-798 .......................................................................................................................5, 7

*Magic Kitchen LLC v. Good Things Internat., Ltd.*, 153 Cal.App.4th 1144, 1161 (Cal. Ct. App. 2007) .....................................................................................................3, 9

*Matsushita Electrical Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) 2

*Miller v. Glenn Miller Productions, Inc., supra*, 454 F.3d at p. 997 ............................ 7

*Pinkette Clothing, Inc. v. Cosmetic Warriors Ltd.*, 894 F. 3d 1015, 1025 (9th Cir. 2018) .................................................................................................................3, 5, 7

*Polar Bear Prods., Inc. v. Timex Corp.*, 384 F. 3d 700, 706 (9th Cir. 2004) ................ 4

*Reserve Media, Inc. v. Efficient Frontiers, Inc.*, 2017 WL 123420, *2 (C.D. Cal. 2017) ................................................................................................................................ 2

*Roley v. New World Pictures,* 19 F. 3d 479, 481 (9th Cir. 1994) ................................. 4

*Tillamook Country Smoker, Inc. v. Tillamook Cty. Creamery Ass'n,* 465 F.3d 1102, 1108 (9th Cir. 2006) ........................................................................................ 5, 7

**Code and Statutes**

1125 .............................................................................................................. i, 3

15 U.S.C. § 1114 .............................................................................................. i

15 U.S.C. § 1125(a) .......................................................................................... i

15 U.S.C. §§ 1114 ........................................................................................... 3

Cal. Civ. Code §§ 337, 343 ............................................................................ 3

Fed. Rule Civ. Proc. 56(a) ............................................................................. 1

**Other Authorities**

Rest.3d Unfair Competition, § 31 .................................................................. 2

**DEFENDANT'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT**

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.  BACKGROUND INFORMATION

Defendant Charles D. Buress Family Trust, doing business as Mini Public Storage, owns and operates a public self-storage facility in Stanton, California. *See* Statement of Uncontroverted Fact ("SUF"), ¶1. Defendant has done business under the name Mini Public Storage at the Stanton location for approximately 40+ years. SUF ¶2.

Plaintiff first learned about Mini Public Storage in 1979. SUF ¶3. Plaintiff contacted Defendant on several occasions to persuade Defendant to change its name beginning on December 4, 1996. SUF ¶4. On December 16, 1996, Defendant responded to Plaintiff's December 4, 1996 letter declining to change its name. SUF ¶4. No action was taken by Plaintiff against Defendant at that time. SUF ¶4.

Plaintiff again communicated with Defendant on February 2, 2007, May 18, 2018, and June 25, 2018 persuading Defendant to change its name. SUF ¶¶5-7. In Plaintiff's further attempt to persuade Defendant to change its name, Plaintiff cited two cases (*Public Storage v. Perry Public Storage, LLC,* No. 1:22-cv-00403-JLS and *Public Storage v. AAA Public Storage,* No. 4:18-cv-00024-RAS) wherein Plaintiff was successful in protecting their trademark rights against Perry Public Storage, LLC and AAA Public Storage who were using Plaintiff's trademark orange colors, which Defendant here has not done. Defendant, at all times, has disputed any wrongdoing and declined to change its name. SUF ¶¶4-7. No action was ever taken by the Plaintiff until the commencement of the present suit, which is now more than 40+ years after Plaintiff had actual knowledge that Defendant was using the name Mini Public Storage before it filed the subject Complaint on June 30, 2023. SUF ¶¶4-8.

## II.  STANDARD OF REVIEW

A party is entitled to summary judgment "if the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. Rule Civ. Proc. 56(a).

1 "Summary judgment must be granted against a party who fails to present evidence sufficient to establish an essential element of that party's case." *Cleary v. News Corp.,* 30 F.3rd 1255, 1259 (9th Cir. 1994), citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986). "When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electrical Industrial Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986). "There is no genuine issue of fact '[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party.'" *Reserve Media, Inc. v. Efficient Frontiers, Inc.,* 2017 WL 123420, *2 (C.D. Cal. 2017), quoting *Matsushita Electrical Industrial Co.,* 475 U.S. at 587.

Once the moving party makes this showing, the non-moving party must set forth facts showing that a genuine issue of disputed fact remains. *Celotex Corp.*, 477 U.S. at 322. The non-moving party is required by Fed. Rule Civ. Proc. 56 to go beyond the pleadings and designate specific facts showing a genuine issue for trial exists. *Id*. at 324.

Moreover, "[t]he moving party need not produce admissible evidence showing the absence of a genuine issue of material fact when the opposing party bears the burden of proof on that issue." *California Security Alarms v. Escobar's Security Plus Alarm Systems, Inc.,* 1996 WL 580841, *2 (N.D. Cal. 1996), citing *Celotex Corp.,* 477 U.S. at 324-25. Rather, the moving party "may discharge its burden simply by pointing out that there is an absence of evidence to support the nonmoving party's case." *Id.* Defendant does so here.

### III. ARGUMENT

#### A. Plaintiff's Complaint is Time Barred by California's Applicable Statute of Limitations

"As applied to Lanham Act claims, "[t]he proper interplay between laches and the statute of limitations . . . is somewhat elusive." (*Jarrow Formulas, Inc. v. Nutrition Now, Inc.* (9th Cir. 2002) 304 F.3d 829, 836 (*Jarrow Formulas*), citing Rest.3d Unfair

1 Competition, § 31, com. a [discussing the uncertain role of the statute of limitations for Lanham Act claims].) Although the Lanham Act contains no explicit statute of limitations, some federal cases hold that Lanham Act claims are governed by the statute of limitations applicable to analogous state law claims. (E.g., *Karl Storz Endoscopy America v. Surgical Tech.* (9th Cir. 2002) 285 F.3d 848, 857 ["Storz's Lanham Act claims are subject to a three-year statute of limitations which began to run upon Storz's actual or constructive knowledge of the wrong"].)" *Magic Kitchen LLC v. Good Things Internat., Ltd.*, 153 Cal.App.4th 1144, 1156 (Cal. Ct. App. 2007)

Under California law, trademark infringement claims have a four-year statute of limitations. See Cal. Civ. Code §§ 337, 343; *Pinkette Clothing, Inc. v. Cosmetic Warriors Ltd.,* 894 F. 3d 1015, 1025 (9th Cir. 2018).

Plaintiff's claims are based principally on violations of the Lanham Act, 15 U.S.C. §§ 1114 and 1125. Plaintiff alleges that it owns U.S. Trademark Registration Nos. 1,132,868 ('868); 2,363,326 ('326); 2,363,327 ('327); 2,487,755; 6206,174; 6,428,494; 5,860,259; 7,058,742; and 7,058,665 registered by the United States Patent and Trademark Office and that Defendant's alleged use of the mark at issue began as early as 1979, when Plaintiff first learned of Mini Public Storage. SUF ¶3. Additionally, since it had knowledge of Defendant's use of the alleged mark in 1979, Plaintiff knew that Defendant was doing business as Mini Public Storage in Stanton, California, when it filed its Fictitious Business Statement, and was continuing to do so for the next 40 years. Indeed, Plaintiff employs a team of individuals who consistently and actively monitor the Public Storage brand who take necessary steps and action against companies and entities infringing on their mark. SUF ¶9. It was not until 17 years later (from 1979) on December 4, 1996 when Plaintiff (presumably Plaintiff's monitoring team) for the first time wrote Defendant in an attempt to persuade Defendant to change its name (SUF ¶4). Defendant responded to Plaintiff declining to change its name and no action was taken by Plaintiff at that time. (SUF ¶4). Eleven years later on February 2, 2007, Plaintiff again wrote Defendant in an attempt to persuade

Defendant to change its name. Defendant declined to change its name and no further action was taken by Plaintiff at that time. (SUF ¶5). Another eleven years later on May 18, 2018 (SUF ¶6) and June 25, 2018 (SUF ¶7) Plaintiff wrote Defendant in an attempt to persuade Defendant to change its name. Further, Plaintiff acknowledges in its June 25, 2018, correspondence to Defendant that counsel received the December 16, 1996, correspondence from the Law Office of Gregory Morse, Defendant's prior counsel, addressing the issue of alleged trademark infringement of the PUBLIC STORAGE mark. SUF ¶7. Mr. Morse's correspondence was in response to an earlier communication from Plaintiff's counsel alleging trademark infringement of the registration. SUF ¶4. As such, Plaintiff had actual knowledge of Defendant's use of the alleged infringing mark in January 1979, or for at least 44 years prior to the commencement of this suit. SUF ¶3, 8. Despite Plaintiff's actual knowledge of Defendant for decades, Plaintiff chose not to enforce its trademark until it filed the subject complaint on June 30, 2023, well past the statute of limitations for this claim. SUF ¶¶3-8.

A cause of action for trademark infringement accrues when one has knowledge of a violation or is chargeable with such knowledge. *Roley v. New World Pictures,* 19 F. 3d 479, 481 (9th Cir. 1994). *"[T]he [ ] clock begins upon discovery of the infringement …." Polar Bear Prods., Inc. v. Timex Corp.,* 384 F. 3d 700, 706 (9th Cir. 2004) (emphasis added). Here, it is undisputed that Plaintiff had knowledge of Defendant's alleged infringement of its mark as early as January 31, 1979, when it sent a letter to the USPTO requesting to supplement its Petition to make special to show infringement of their service mark allegedly by Defendant. SUF ¶3. Therefore, Plaintiff's statute of limitations clock began to run as early as January 31, 1979.

Plaintiff's 44-year year delay in enforcing its rights past the statute of limitations constitutes an unreasonable delay. For these reasons, this Court should grant summary judgment in favor of Defendant and against Plaintiff, as Plaintiff had actual knowledge of Defendant's alleged use of the mark for 44 years before it filed the instant action.

### B. Plaintiff's Complaint is Time Barred by the Doctrine of Laches

Lanham Act claims in the Ninth Circuit are also presumptively subject to a four-year limitations period pursuant to the doctrine of laches. *Id.* (drawing from "the most analogous state statute of limitations"). Under both federal and state law, the clock begins to run from the time a plaintiff knew or should have known about the alleged infringement. *Id.* (Laches runs "from the time the plaintiff knew or should have known about its potential cause of action." (citing *Tillamook Country Smoker, Inc. v. Tillamook Cty. Creamery Ass'n,* 465 F.3d 1102, 1108 (9th Cir. 2006) ("[T]he state limitations period runs from the time the plaintiff knew or should have known" about Lanham Act claim.).

Laches is an equitable time limitation on a party's right to bring suit, resting on the maxim that "equity aids the vigilant, not those who sleep on their rights." (*Lyons Partnership, L.P. v. Morris Costumes, Inc.* (4th Cir. 2001) 243 F.3d 789, 797-798 (*Lyons*); see also *Jarrow Formulas, supra*, 304 F.3d at p. 835 ["`one who seeks the help of a court of equity must not sleep on his rights'"].)   It is well established that laches is a valid defense to Lanham Act claims. (*Jarrow Formulas, supra*, 304 F.3d at p. 835; *GoTo.Com., Inc. v. Walt Disney Co.* (9th Cir. 2000) 202 F.3d 1199, 1209; *Kason Industries v. Component Hardware Group* (11th Cir. 1997) 120 F.3d 1199, 1203.)

In *Pinkette*, the Ninth Circuit found that the district court did not abuse its discretion in applying laches to bar Cosmetic Warriors Limited's ("CWL") infringement claims against Pinkette because CWL waited too long to bring its case after it "should have known about its claims." *Pinkette,* 894 F.3d 1015, 1025. In doing so, the Court analyzed the laches defense using a two-step process.

First, the Court assessed the plaintiff's delay by looking to whether the most analogous state statute of limitations has expired.  If the most analogous state statute of limitations expired before suit was filed, there is a strong presumption in favor of laches.  *La Quinta Worldwide LLS v. Q.R.T.M., S.A. de C.V.*, 762 F.3d 867, 878 (9th

Cir. 2014). As set forth above, Defendant has demonstrated that it meets this burden in the two-step process.

Second, the Court assessed the equity of applying laches under the *E-Systems* factors: (1) "strength and value of the trademark rights asserted;" (2) "plaintiff's diligence in enforcing the mark"; (3) harm to senior user if relief denied; (4) "good faith ignorance by junior user;" (5) "competition between senior and junior users." And (6) "extent of harm suffered by junior user because of senior user's delay." *E-Sys., Inc v. Monitek, Inc.,* 720 F.3d 604, 607 (9th Cir. 1983). Indeed, Defendant has also demonstrated that it meets five out of the six *E-Systems* factors to successfully assert a laches defense against Plaintiff in this two-step process, as follows:

### 1. Plaintiff's Diligence in Enforcing the Mark

Plaintiff acknowledged that it communicated with Defendant regarding the alleged trademark infringement at least as far back as December 1996. SUF ¶¶4-7. At a minimum, Plaintiff's written communication establishes that Plaintiff had actual knowledge of Defendant's mark for several years and made the decision not to enforce its trademark at that time. SUF ¶¶4-7. Defendant should not have to suffer involuntary abandonment of its tradename merely because Plaintiff failed in its diligence to properly police its own marks. *E-Systems v. Monitek, Inc.*, 720 F.2d 604, 607 (9th Cir. 1983). Laches bars a trademark infringement action even though Plaintiff lacked actual knowledge until the year of suit, where "plaintiff ought to have discovered defendant's use sooner had it been diligently seeking to enforce its marks." *Id.* In this case, Plaintiff knew about the claim in 1979 when it had actual knowledge of the Defendant's use of the name MINI PUBLIC STORAGE. As demonstrated, Plaintiff delayed for at least 40+ years before filing the instant action. SUF ¶¶3-8. There is no justifiable reason for Plaintiff's 40+ year delay in bringing their claim against Defendant. Moreover, Plaintiff has failed to offer a legitimate excuse for their lengthy delay and thus their claims are presumptively barred by laches.

If a Lanham Act claim is filed ***after*** the analogous limitations period has expired

1  – here, four years, the presumption is that laches bars the suit. (*Danjaq LLC v. Sony Corp,* 263 F.3d 942, 952; see also *Miller v. Glenn Miller Productions, Inc., supra*, 454 F.3d at p. 997; *Lyons,* supra, 243 F.3d at p. 799; *Hot Wax, Inc. v. Turtle Wax*, Inc. (7th Cir. 1999) 191 F.3d 813, 821 (Hot Wax).)

Laches runs "from the time the plaintiff knew or should have known about its potential cause of action." *Tillamook, supra* at 1108. Plaintiff should have known about its claims on or about January 31, 1979, when it sent a letter to the USPTO requesting to supplement its Petition to make special to show infringement of their service mark allegedly by Defendant. SUF ¶3. Yet, Plaintiff slept on their rights and did not file the present action for trademark infringement until June 30, 2023. Because Plaintiff delayed beyond the expiration of the analogous state statute of limitations, a strong presumption in favor of laches arises. *La Quinta Worldwide*, 762 F.3d at 878.

As such, this factor weighs in favor of a finding of laches.

## 2. Harm to Senior User if Relief Denied

The harm to Plaintiff if relief is denied does not weigh strongly in favor Plaintiff. Plaintiff has been in existence since 1972 with over 2,850 facilities in the United States. SUF ¶10. On the other hand, Defendant operates seven (7) self-storage facilities in Southern California, with only one (1) using the name MINI PUBLIC STORAGE:

(1) AAA Quality Self Storage – Covina;
(2) AAA Quality Self Storage – Lake Forest;
(3) AAA Quality Self Storage – Tustin;
(4) AAA Quality Self Storage – Long Beach;
(5) Your Space Self Storage – Norwalk;
(6) Sun Valley Self Storage – Sun Valley; and
(7) Mini Public Storage – Stanton.

SUF ¶11.

The subject facility, MINI PUBLIC STORAGE, in Stanton, California has operated at this location for approximately 40+ years. SUF ¶2. As such, both Plaintiff

and Defendant have coexisted, without incident, since at least January 31, 1979. SUF ¶¶2-3. "[D]elay weakens a claim …, because the public may learn to distinguish between similar marks over time, so that any real likelihood of confusion gradually dissipates." *Pinkette*, 894 F.3d 1015, 1027 citing *Cf. Grupo*, 391 F3d at 1104. Plaintiff has not and cannot show it will be harmed or prejudiced should Plaintiff be denied the requested relief.

Therefore, this factor weighs in favor of a finding of laches.

### 3. Good Faith Ignorance by Junior User

As stated above, Defendant has used the name MINI PUBLIC STORAGE at the Stanton location for approximately 40+ years. In 1996, when the alleged infringement was first brought to Defendant's attention, Defendant assured Plaintiff that Defendant had no intent to infringe on any mark, nor was it attempting to claim ownership to the words "public storage". SUF ¶4. Following Defendant's December 16, 1996 letter to Plaintiff declining to change its name, Plaintiff took no further action at that time. SUF ¶4. In fact, of Defendant's seven (7) self-storages facilities, only one bears the name MINI PUBLIC STORAGE. There is no indication or evidence that Defendant was ever trying to hide its use of the name MINI PUBLIC STORAGE as it was open and obvious. Additionally, there is no evidence that Defendant ever sought to "free ride" on Plaintiff's goodwill or take unfair advantage of any similarities, if any, between the two company's marks. Moreover, Defendant's signage is and has always been strikingly distinct and different from that of Plaintiff, in color, size, font, and name.

Thus, Defendant's good faith weighs in favor of laches.

### 4. Competition Between Senior and Junior Users

This factor also weighs in favor of laches. As stated above, Plaintiff and Defendant have coexisted for at least 40+ years without incident. While Plaintiff operates 2,850 locations throughout the United States, Defendant operates 7 self-storage facilities throughout Southern California, with only **one** (1) location bearing the name MINI PUBLIC STORAGE. Moreover, Defendant has no intention of expanding its

self-storage business using the name Mini Public Storage. Instead, and as reflected above, Defendant has expanded its self-storage business using the name AAA Quality Self Storage in at least four (4) of its seven (7) locations. SUF ¶¶11-12.

As such, this factor weighs in favor of laches.

### 5. Extent Of Harm Suffered By Junior User Because Of Senior User's Delay

"'A defendant has been prejudiced by a delay when the assertion of a claim available some time ago would be "inequitable" in light of the delay in bringing that claim . . . [and] ensues when a defendant has changed his position in a way that would not have occurred if the plaintiff had not delayed.'" (*Hot Wax, supra*, 191 F.3d at p. 824; see also *Danjaq LLC, supra*, 263 F.3d at p. 955 ["A defendant may . . . demonstrate prejudice by showing that it took actions or suffered consequences that it would not have, had the plaintiff brought suit promptly"].) *Magic Kitchen LLC v. Good Things Internat., Ltd.*, 153 Cal.App.4th 1144, 1161 (Cal. Ct. App. 2007). Courts have found prejudice sufficient to support a finding of laches where, as a result of plaintiff's delay in bringing suit, a defendant has invested resources in developing and marketing a product. In *Hot Wax, supra*, 191, F. 3d 813, plaintiff a car wax manufacturer, sued a competitor for misrepresenting the qualities of its competing car wax product. The district court entered summary judgment for the defendant concluding that laches barred plaintiff's claim (*Id.*, at 818). The appellate court affirmed, finding clear prejudice to defendant. It explained "Hot Wax permitted Turtle Wax's advertising and the development of its products to go unchecked for well over a ten- to twenty-year period. During this time, Hot Wax sat idly by and chose not to challenge Turtle Wax's use of the term `wax' with respect to its products, and Turtle Wax invested significant amounts of time and money in product development and advertising … Had Hot Wax successfully pressed its claims in a timely manner, Turtle Wax certainly could have invested its time and money in other areas or simply renamed its products. Accordingly, in light of the extreme length of the unreasonable delay by Hot Wax, we conclude that

the district court did not err in concluding that Turtle Wax was prejudiced by this delay." (*Id.* at p. 824, fn. omitted.)

Here, Plaintiff had forty years to pursue its alleged trademark infringement claim in court but chose not to. Despite Plaintiff having actual knowledge about Defendant's mark for at least 40+ years, Plaintiff decided not to enforce its trademark. During that time, Defendant has used significant resources to establish use of the name MINI PUBLIC STORAGE, as well as cultivate its consumer base and develop a commercial impression as to the source of the MINI PUBLIC STORAGE goods and services. Defendant has invested a substantial amount of time in building the business. Being forced to give up its investment in the MINI PUBLIC STORAGE name would be substantial, given Plaintiff's delay in filing its claim.

Again, Plaintiff knew or should have known of its potential cause of action against Defendant in December 1979, yet waited 40+ years to file its complaint after Defendant has expended significant resources in the business.

This final factor weighs in favor of laches.

### IV. CONCLUSION

For the foregoing reasons and based on any further evidence or argument presented at or before the hearing on this matter, Defendant CHARLES D. BURRUS FAMILY TRUST d/b/a MINI PUBLIC STORAGE respectfully requests that this Court enter summary judgment in its favor and against Plaintiff PUBLIC STORAGE.

Dated: August 22, 2024         LAW OFFICES OF MANDANA JAFARINEJAD, P.C.

                               */s/ Mandana Jafarinejad*
                               _____
                               Mandana Jafarinejad
                               Attorneys for Defendant CHARLES D. BURRUS

# CERTIFICATE OF SERVICE

At the time of service, I was over the age of 18 years, and not a party to this action. My business address is 1 Park Plaza, Suite 600, Irvine, CA 92614

On August 22, 2024, I served the following document(s) on the parties in the within action:

**DEFENDANT CHARLES D. BURRUS FAMILY TRUST D/B/A MINI PUBLIC STORAGE'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**

| | |
|---|---|
| Susan M. Natland<br>susan.natland@knobbe.com<br>KNOBBE, MARTENS, OLSON & BEAR, LLP<br>2040 Main Street, Fourteenth Floor<br>Irvine, CA 92614<br>Phone: (949) 760-0404<br>Facsimile: (949) 760-9502<br><br>Attorneys for Plaintiff | Hans L. Mayer<br>hans.mayer@knobbe.com<br>Katherine R. McMorrow<br>kate.mcmorrow@knobbe.com<br>1925 Century Park East, Suite 600<br>Los Angeles, CA 90067<br>Telephone: (310) 551-3450<br>Facsimile: (310) 601-1263<br><br>Attorneys for Plaintiff |

[X]   BY ECF: I attached and submitted the above-described document(s) to the ECF system for filing.

[ ]   BY MAIL: I placed a true copy in a sealed envelope addressed as indicated above, on the above-mentioned date. I am familiar with the firm's practice of collection and processing correspondence for mailing. It is deposited within the U.S. Postal Service on that same day in the ordinary course of business. I am aware that on mention of party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit of mailing in affidavit.

[ ]   BY PERSONAL SERVICE: I placed a true copy in a sealed envelope addressed to each person(s) named at the address(es) shown above and giving same to a messenger for personal delivery before 5:00 p.m. on the above mentioned date.

[ ]   BY ELECTRONIC SERVICE (C.C.P. § 1010.6 and pursuant to California Rules of Court, Emergency Rule 12.): I caused such document to be served on this date by electronic transmission in accordance with standard procedures and to the e-mail address listed on the attached service list.

[ ]   BY FACSIMILE: From facsimile number _____, I caused each such document to be transmitted by facsimile machine, to the parties and numbers indicated above, pursuant to Rule 2008. The facsimile machine I used complied with Rule 2003(3) and no error was reported by the machine. Pursuant to Rule 2008(e)(4), I caused the machine to print a transmission record of the transmission, a copy of which is attached hereto.

[ ]   BY FEDERAL EXPRESS: On the above mentioned date, I placed a true copy of the above mentioned document(s) in a sealed envelope or package designated by Federal Express with delivery fees paid or provided for, addressed to the person(s) as indicated above and deposited same in a box or other facility regularly maintained by Federal Express to received documents.

I declare under penalty of perjury under the law of the United States of America that the foregoing is true and correct and was executed this 22nd day of August, 2024.

_____
Rosie Cantillo