UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES – GENERAL

Case No.: 8:23-cv-01190-FWS-DFM                    Date: October 3, 2024
Title: Public Storage v. Charles D. Burrus Family Trust d/b/a Mini Public Storage

Present: **HONORABLE FRED W. SLAUGHTER, UNITED STATES DISTRICT JUDGE**

  Melissa H. Kunig                                        N/A
Deputy Clerk                                              Court Reporter

Attorneys Present for Plaintiff:                    Attorneys Present for Defendant:

Not Present                                              Not Present

**PROCEEDINGS: ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY
JUDGMENT [46], DENYING DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT [55], AND GRANTING PLAINTIFF'S
CROSS-MOTION FOR SUMMARY JUDGMENT [52]**

In this case, Plaintiff Public Storage ("Plaintiff") alleges Defendant Charles D. Burrus Family Trust d/b/a Mini Public Storage ("Defendant") infringes Plaintiff's Public Storage® trademarks. (Dkt. 1 ("Complaint").) Now before the court are three motions for summary judgment. The first motion before the court is Plaintiff's Motion for Summary Judgment. (Dkt. 46 ("Plaintiff's Motion" or "P. Mot.").) In Plaintiff's Motion, Plaintiff seeks summary judgment in Plaintiff's favor on Plaintiff's claims and on Defendant's affirmative defenses other than laches and the statute of limitations. (*See generally id.*) Plaintiff filed a Statement of Uncontroverted Facts in support of Plaintiff's Motion. (Dkt. 51.) Defendant opposes Plaintiff's Motion, (Dkt. 61 ("D. Opp.")), and also filed a Statement of Genuine Issues in response to Plaintiff's Statement of Uncontroverted Facts, (Dkt. 62.) Plaintiff filed a Reply in support of Plaintiff's Motion, (Dkt. 64 ("P. Reply")), including a response to Defendant's Statement of Genuine Issues, (Dkt. 65.)

The second motion before the court is Defendant's Motion for Summary Judgment. (Dkt. 52 ("Defendant's Motion" or "D. Mot.").) In Defendant's Motion, Defendant seeks summary judgment in Defendant's favor on Plaintiff's claims based on Defendant's

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.: 8:23-cv-01190-FWS-DFM                     Date: October 3, 2024
Title: Public Storage v. Charles D. Burrus Family Trust d/b/a Mini Public Storage

affirmative defenses of statute of limitations and laches. (*See generally id.*) Defendant filed a Statement of Uncontroverted Facts in support of Defendant's Motion. (Dkt. 53.)

The third motion before the court is Plaintiff's Cross-Motion for Summary Judgment. (Dkt. 55 ("Cross-Motion" or "Cross-Mot.").) In the Cross-Motion, Plaintiff seeks summary judgment in Plaintiff's favor on Defendant's affirmative defenses of statute of limitations and laches. (*See generally id.*) Plaintiff filed a statement of uncontroverted facts in support of the Cross-Motion, which responds to the Statement of Uncontroverted Facts in support of Defendant's Motion and also presents additional uncontroverted facts. (Dkt. 63.) Defendant filed a response to the Cross-Motion, which also serves as a reply in support of Defendant's Motion. (Dkt. 66 ("D. Resp. to Cross-Mot.").)

On October 3, 2024, the court held a hearing on Plaintiff's Motion, Defendant's Motion, and the Cross-Motion and took the matters under submission. (Dkt. 71.) Based on the state of the record, as applied to the applicable law, Plaintiff's Motion is **GRANTED**, Defendant's Motion is **DENIED**, and the Cross-Motion is **GRANTED**.

I.      **Summary of Undisputed Facts**

Plaintiff and Defendant are competitors who offer self-storage services and also sell packing and moving supplies. (Dkt. 65 ¶¶ 15-18, 21, 24-27, 40-41.)

Plaintiff "first used its PUBLIC STORAGE mark in U.S. commerce at least as early as 1972 in El Cajon, CA in connection with self-storage rental services," and 'has continuously offered a variety of goods under its PUBLIC STORAGE mark since at least 1975." (*Id.* ¶¶ 5-7.) On April 8, 1980, Plaintiff "was granted U.S. Trademark Registration No. 1,132,868 (the ''868 Registration') for the mark PUBLIC STORAGE for 'renting of private storage spaces with limited access.'" (*Id.* ¶ 2.) "The '868 Registration has an incontestable status." (*Id.* ¶ 3.) Plaintiff also "owns incontestable U.S. Registration Nos. 2,363,326 (PUBLIC STORAGE®), 2,363,327 (PUBLIC STORAGE®), and 2,487,755 (PUBLIC STORAGE®), as well as U.S. Registration Nos. 6,206,174 (PUBLIC STORAGE®), 6,428,494 (®), 5,860,259 (PUBLIC

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES – GENERAL

Case No.: 8:23-cv-01190-FWS-DFM                              Date: October 3, 2024
Title: Public Storage v. Charles D. Burrus Family Trust d/b/a Mini Public Storage

STORAGE ADVANTAGE®), 7,058,665 (PUBLIC STORAGE®), and 7,058,742 (PUBLIC STORAGE®).” (*Id.* ¶ 4.) The court refers to Plaintiff's trademarks together as the "Marks." Using the Marks, Plaintiff now "operates thousands of locations around the United States, including 444 storage locations in California" with "approximately 1.9 million customers" and billions of dollars in annual revenue. (*Id.* ¶¶ 11-14.) Plaintiff "is well-known in the self-storage industry," and "has experienced significant commercial success and become a leader in the storage facility industry." (*Id.* ¶¶ 10, 12.)

"Defendant operates seven (7) self-storage facilities in Southern California." (Dkt. 63 ¶ 11.) One of those facilities, in Stanton, California, "is branded as MINI PUBLIC STORAGE." (*Id.* ¶¶ 1, 11; Dkt. 65 ¶¶ 22, 43, 45; Dkt. 67 ¶ 1.) Defendant's other facilities have other names: "(1) AAA Quality Self Storage – Covina; (2) AAA Quality Self Storage – Lake Forest; (3) AAA Quality Self Storage – Tustin; (4) AAA Quality Self Storage – Long Beach; (5) Your Space Self Storage – Norwalk; [and] (6) Sun Valley Self Storage – Sun Valley." (Dkt. 63 ¶ 11; *see* Dkt. 61-1 (Declaration of Benjamin Wells, "Wells Decl.") ¶ 14.) Defendant's "MINI PUBLIC STORAGE" facility "is less than 1.3 miles from [Plaintiff]'s self-storage facility in Stanton, CA," and those two facilities "are in direct competition." (Dkt. 65 ¶¶ 43-44; Dkt. 67 ¶ 15.)

In this case, the parties dispute whether Defendant is improperly using the Marks at its "MINI PUBLIC STORAGE" facility. (*See* Dkt. 65 ¶ 46.) "Defendant has done business under the name Mini Public Storage at the Stanton location for approximately 40+ years." (Dkt. 63 ¶ 2.) "Plaintiff first learned about Mini Public Storage in 1979." (*Id.* ¶ 3.) On at least four separate occasions—in December 1996, February 2007, May 2018, and June 2018—Plaintiff contacted Defendant in an effort to persuade Defendant to change its name. (*Id.* ¶¶ 4-7; *see* Dkt. 61-2 (Defendant's Response to Plaintiff's 1996 Letter); Dkt. 61-3 (Plaintiff's 2007 Letter); Dkt. 61-3 (May 2018 Correspondence); Dkt. 61-4 (Plaintiff's June 2018 Letter).) Each time, Defendant declined to change its name, and Plaintiff took no further action. (Dkt. 63 ¶¶ 4-7.) On June 30, 2023, Plaintiff filed this case. (*Id.* ¶ 8; Dkt. 1.)

---

_____
UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES – GENERAL

Case No.: 8:23-cv-01190-FWS-DFM                     Date: October 3, 2024
Title: Public Storage v. Charles D. Burrus Family Trust d/b/a Mini Public Storage
═══════════════════════════════════════════════════════════════

## II.    Legal Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). An issue of fact is "genuine" only if there is sufficient evidence for a reasonable fact finder to find for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is "material" if it may affect the outcome of the case, and the "substantive law [] identif[ies] which facts are material." *Id.* "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.*

The moving party bears the initial burden of identifying the elements of the claim or defense on which summary judgment is sought and evidence that it believes demonstrates the absence of an issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Where the non-moving party will have the burden of proof at trial, the movant can satisfy its initial burden by demonstrating that there is an absence of evidence to support the non-moving party's case. *Id.* at 325; *see also Horphag Rsch. Ltd. v. Garcia*, 475 F.3d 1029, 1035 (9th Cir. 2007) ("The moving party bears the initial burden to demonstrate the absence of any genuine issue of material fact.").

The non-moving party then "must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 250 (citation omitted); *see also Far Out Prods., Inc. v. Oskar*, 247 F.3d 986, 997 (9th Cir. 2001) (In opposing summary judgment, "the non-moving party must go beyond the pleadings and by its own evidence 'set forth specific facts showing that there is a genuine issue for trial'"); *Jackson v. Bank of Hawaii*, 902 F.2d 1385, 1389 (9th Cir. 1990) ("The non-moving party may not oppose summary judgment by allegations but must show specific trial-worthy facts."). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting *First Nat. Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 289 (1968)). "In judging evidence at the summary judgment stage, the court does not make credibility determinations or weigh

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.: 8:23-cv-01190-FWS-DFM                    Date: October 3, 2024
Title: Public Storage v. Charles D. Burrus Family Trust d/b/a Mini Public Storage

---

conflicting evidence." *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007). The court must draw all reasonable inferences in the non-moving party's favor. *In re Oracle Corp.*, 627 F.3d at 387 (citing *Anderson*, 477 U.S. at 255).

Nevertheless, "inferences are not drawn out of thin air, but from evidence." *Richards v. Nielsen Freight Lines*, 602 F. Supp. 1224, 1247 (E.D. Cal. 1985), *aff'd*, 810 F.2d 898 (9th Cir. 1987). "[M]ere disagreement or the bald assertion that a genuine issue of material fact exists" does not preclude summary judgment. *Harper v. Wallingford*, 877 F.2d 728, 731 (9th Cir. 1989). "[S]ummary judgment will not lie if the dispute about a material fact is genuine, that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248 (internal quotation marks omitted). "By its very terms, this standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Id.* at 247-48; *see also United States v. Fred A. Arnold, Inc.*, 573 F.2d 605, 606 (9th Cir. 1978) ("A summary judgment cannot be granted if a genuine issue as to any material fact exists.").

In *In re Oracle Corp.*, the Ninth Circuit described the burdens of proof in the summary judgment process:

> The moving party initially bears the burden of proving the absence of a genuine issue of material fact. Where the non-moving party bears the burden of proof at trial, the moving party need only prove that there is an absence of evidence to support the non-moving party's case. Where the moving party meets that burden, the burden then shifts to the non-moving party to designate specific facts demonstrating the existence of genuine issues for trial. This burden is not a light one. The non-moving party must show more than the mere existence of a scintilla of evidence. The non-moving party must do more than show there is some "metaphysical doubt" as to the material facts at issue. In fact, the non-moving party must come forth with

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.: 8:23-cv-01190-FWS-DFM                            Date: October 3, 2024
Title: Public Storage v. Charles D. Burrus Family Trust d/b/a Mini Public Storage

> evidence from which a jury could reasonably render a verdict in the
> non-moving party's favor.  In determining whether a jury could
> reasonably render a verdict in the non-moving party's favor, all
> justifiable inferences are to be drawn in its favor.

627 F.3d at 387 (citations omitted).

## III.    Discussion

The court first analyzes Defendant's Motion and Plaintiff's Cross-Motion, and then turns
to Plaintiff's Motion.

### A.    Defendant's Motion and Plaintiff's Cross-Motion

In Defendant's Motion, Defendant moves for summary judgment in Defendant's favor on
the basis that Plaintiff's Complaint is time-barred under (1) the doctrine of laches and (2) the
statute of limitations.  (*See generally* D. Mot.)  In Plaintiff's Cross-Motion, Plaintiff moves for
summary judgment on Defendant's laches and statute of limitations defenses.  (*See generally*
Cross-Mot.)

#### 1.    Laches

"The affirmative defense of laches 'is an equitable time limitation on a party's right to
bring suit, which is derived from the maxim that those who sleep on their rights, lose them.'"
*Eat Right Foods Ltd. v. Whole Foods Mkt., Inc.*, 880 F.3d 1109, 1115 (9th Cir. 2018) (quoting
*Miller v. Glenn Miller Prod., Inc.*, 454 F.3d 975, 997 (9th Cir. 2006) (per curiam)).  Laches bars
a trademark claim when "the trademark holder knowingly allowed the infringing mark to be
used without objection for a lengthy period of time."  *Id.* (internal quotation omitted).

Courts "analyze the laches defense with a two-step process." *Pinkette Clothing, Inc. v.
Cosm. Warriors Ltd.*, 894 F.3d 1015, 1025 (9th Cir. 2018).  "First, [courts] assess the plaintiff's

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.: 8:23-cv-01190-FWS-DFM                              Date: October 3, 2024
Title: Public Storage v. Charles D. Burrus Family Trust d/b/a Mini Public Storage

=====

delay by looking to whether the most analogous state statute of limitations has expired.  If the most analogous state statute of limitations expired before suit was filed, there is a strong presumption in favor of laches.  That presumption is reversed, however, if the most analogous state statute of limitations expired after suit was filed." *Id.* (internal citations omitted); *see also Jarrow Formulas, Inc. v. Nutrition Now, Inc.*, 304 F.3d 829, 835-36 (9th Cir. 2002) ("[A] laches determination is made with reference to the limitations period for the analogous action at law.  If the plaintiff filed suit within the analogous limitations period, the strong presumption is that laches is inapplicable.  However, if suit is filed outside of the analogous limitations period, courts often have presumed that laches is applicable.").

Here, "[t]he most analogous state statute of limitations in this case is California's four-year statute of limitations for trademark infringement actions."  *Id.*  "Laches runs from the time the plaintiff knew or should have known about its potential cause of action."  *Id.* (internal quotation omitted).  "Plaintiff first learned about Mini Public Storage in 1979," and attempted to persuade Defendant in 1996, 2007, and 2018 to change its name.  (Dkt. 63 ¶¶ 4-7.)  However, Plaintiff did not file suit for trademark infringement until 2023.  (*See* Dkt. 1.)  "Because [Plaintiff] delayed beyond the expiration of the most analogous state statute of limitations, a strong presumption in favor of laches arises."  *Pinkette Clothing*, 894 F.3d at 1025; *see, e.g.*, *Harman Int'l Indus., Inc. v. Jem Accessories, Inc.*, 668 F. Supp. 3d 1025, 1038 (C.D. Cal. 2023) (finding "presumption in favor of laches" applied when counterclaims for trademark infringement filed more than four years after party asserting infringement had "knowledge of its potential claim").

In the second step in the laches analysis, courts "assess the equity of applying laches using the *E-Systems* factors: (1) strength and value of trademark rights asserted; (2) plaintiff's diligence in enforcing mark; (3) harm to senior user if relief denied; (4) good faith ignorance by junior user; (5) competition between senior and junior users; and (6) extent of harm suffered by junior user because of senior user's delay."  *Pinkette Clothing*, 894 F.3d at 1025 (internal quotations omitted) (citing *E-Sys., Inc. v. Monitek, Inc.*, 720 F.2d 604, 607 (9th Cir. 1983)).

---

**CIVIL MINUTES – GENERAL**                                                              **7**

_____

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.: 8:23-cv-01190-FWS-DFM                          Date: October 3, 2024
Title: Public Storage v. Charles D. Burrus Family Trust d/b/a Mini Public Storage

On the first factor, Defendant "does not dispute that [Plaintiff's Marks] [are] strong and valuable, and this factor therefore weighs against applying laches." *Pinkette Clothing*, 894 F.3d at 1027; (*see* D. Mot. at 6 (arguing that "Defendant has also demonstrated that it meets five out of the six *E-Systems* factors to successfully assert a laches defense against Plaintiff in this two-step process," with the one remaining factor being the strength and value of Plaintiff's trademark rights).)

The second factor—Plaintiff's diligence in enforcing the Marks—is either neutral or weighs only slightly in favor of applying laches. As noted, "Plaintiff first learned about Mini Public Storage in 1979," (Dkt. 63 ¶ 3), but did not file this suit until 2023, (Dkt. 1); *see Pinkette Clothing*, 894 F.3d at 1027 (finding this factor weighed in favor of applying laches when the party asserting infringement waited five years to file suit). But the question regarding Plaintiff's diligence is not whether Plaintiff delayed, but rather whether Plaintiff's delay was reasonable. *See Eat Right Foods*, 880 F.3d at 1117. And "[t]o determine whether a delay is reasonable, [courts] look to the cause of the delay." *Id.* (internal quotation omitted). "Reasonable justifications for a delay include," among others, "determining whether the scope of proposed infringement will justify the cost of litigation." *Id.* (quoting *Danjaq LLC v. Sony Corp.*, 263 F.3d 942, 954 (9th Cir. 2001)). Indeed, "[l]aches is not measured from a defendant's first use of the contested mark, but from the date that defendant began significantly impacting plaintiff's goodwill and business reputation." *Nat'l Customer Eng'g Inc. v. Lockheed Martin Corp.*, 1997 WL 363970, at *6 (C.D. Cal. Feb. 14, 1997). Here, Plaintiff's 30(b)(6) witness testified that Plaintiff sued only when "it came to [their] attention that this was actually causing customer consumer confusion," and therefore would "validate the cost of litigation and going through the process." (Dkt. 57-1, Ex. 35 (Excerpts from Transcript of Deposition of Seema Kacker) at 28.) The court therefore concludes this factor is either neutral or weighs only slightly in favor of applying laches.

"The third factor—the harm to the senior user if relief is denied—does not weigh strongly in either one direction or the other." *Pinkette Clothing*, 894 F.3d at 1027. "On the one hand, [the court] recognize[s] that the lack of a permanent injunction restraining [Defendant's] use of the mark harms [Plaintiff] by diminishing its control over its brand." *Id.*; *see M.I.B. Grp. LLC*

_____

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.: 8:23-cv-01190-FWS-DFM                    Date: October 3, 2024
Title: Public Storage v. Charles D. Burrus Family Trust d/b/a Mini Public Storage

---

*v. Aguilar*, 2024 WL 3857540, at *18 (C.D. Cal. July 16, 2024) (finding this factor weighed against the application of laches when "[a]llowing [Defendant] to use a mark that is nearly indistinguishable from Plaintiff's mark certainly harms Plaintiff"). "On the other hand, the two companies successfully coexisted from" 1972 through 2023. *Pinkette Clothing*, 894 F.3d at 1027. "On the whole, the third factor is either neutral or only weakly favors applying laches." *Id.* at 1028.

The fourth factor—the good faith ignorance of the junior user—is also neutral. There is no evidence in the record regarding whether Defendant knew about Plaintiff's Marks at the time it opened Mini Public Storage. (*See* P. Mot. at 14; D. Opp. at 17; P. Reply at 9-10 (all discussing the lack of evidence regarding Defendant's intent in selecting its name).) Although it is possible that Defendant did know about Plaintiff's Marks given how well-known the Marks are, "there is no evidence that [Defendant] ever sought to free-ride on [Plaintiff's] good will or otherwise take unfair advantage of the similarity between the two companies' marks." *Pinkette Clothing*, 894 F.3d at 1027; (Wells Decl. ¶ 16 ("At no time did [Defendant] intend on infringing on Plaintiff's mark, nor was it attempting to claim ownership to the words 'public storage'.")); *cf. La Quinta Worldwide LLC v. Q.R.T.M., S.A. de C.V.*, 762 F.3d 867, 879 (9th Cir. 2014) (affirming denial of laches defense when district court made findings including "that Quinta Real knew of La Quinta's presence in the United States before it began exploring the possibility of opening a hotel in a major U.S. city"); *M.I.B. Grp.*, 2024 WL 3857540, at *18 ("Aguilar did not begin using MIB in good faith. As a previous employee of one (or more) of Wilkerson's various MIB businesses, he was well aware of Wilkerson's use of the mark. This factor weighs against the application of laches.").

The fifth factor—competition between senior and junior users—weighs against applying laches because Plaintiff and Defendant "are in direct competition." (Dkt. 65 ¶¶ 43-44; Dkt. 67 ¶ 15); *see La Quinta Worldwide*, 762 F.3d at 879 (affirming denial of laches defense when district court made findings including that "the two marks will compete with each other in the United States with significant harm to La Quinta, the senior user"); *see also Pinkette Clothing*, 894 F.3d at 1027 (finding this factor weighed in favor of applying laches when there was "no evidence" that the parties had "ever competed with each other"); *M.I.B. Grp.*, 2024 WL

---

**CIVIL MINUTES – GENERAL**                                                                    9

_____

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES – GENERAL

Case No.: 8:23-cv-01190-FWS-DFM                    Date: October 3, 2024
Title: Public Storage v. Charles D. Burrus Family Trust d/b/a Mini Public Storage
═══════════════════════════════════════════════════════════════

3857540, at *18 (finding this factor weighed against the application of laches when "[a]llowing [Defendant] to use a mark that is nearly indistinguishable from Plaintiff's mark certainly harms Plaintiff").

The sixth factor—the extent of harm the junior user suffered because of the senior user's delay—weighs strongly against applying laches. *See Pinkette Clothing*, 894 F.3d at 1028. "Courts have recognized two chief forms of prejudice in the laches context—evidentiary and expectations-based. Evidentiary prejudice includes such things as lost, stale, or degraded evidence, or witnesses whose memories have faded or who have died." *Danjaq LLC*, 263 F.3d at 955. "Expectations-based prejudice exists where a defendant took actions or suffered consequences that it would not have, had the plaintiff brought suit promptly." *Eat Right Foods*, 880 F.3d at 1119 (cleaned up). This may include investing money to expand the defendant's business, entering into business transactions based on the defendant's presumed rights in a disputed mark, or incurring liability for damages as a result from such business transactions. *Id.* "Establishing undue prejudice requires that the defendant show at least some reliance on the absence of a lawsuit." *Id.* (internal quotations omitted).

In support of its contention that laches applies, Defendant argues that during the "40+ years" that Plaintiff knew about Defendant's mark but "decided not to enforce its trademark," Defendant "used significant resources to establish use of the name MINI PUBLIC STORAGE, as well as cultivate its consumer base and develop a commercial impression as to the source of the MINI PUBLIC STORAGE goods and services," and "invested a substantial amount of time in building the business" meaning that "[b]eing forced to give up its investment in the MINI PUBLIC STORAGE name would be substantial, given Plaintiff's delay in filing its claim." (D. Mot. at 10.) Similarly, in response to the Cross-Motion, Defendant argues that it "continued to build and invest significant resources in cultivating its consumer base, all the while incurring additional potential liability" during the years Plaintiff chose not to sue. (D. Resp. to Cross-Mot. at 8.)

However, the court finds insufficient evidence of any prejudice to Defendant from Plaintiff's delay. First, since Defendant "only invoke[s] expectations-based prejudice," the

_____

_____

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES – GENERAL

Case No.: 8:23-cv-01190-FWS-DFM                              Date: October 3, 2024
Title: Public Storage v. Charles D. Burrus Family Trust d/b/a Mini Public Storage

═══════════════════════════════════════════════════════════════════

court "will not consider evidentiary prejudice." *M.I.B. Grp.*, 2024 WL 3857540, at *18.
Second, to show expectations-based prejudice, a defendant must do more than merely state that
it spent money promoting the infringed name; if prejudice sufficient to show laches "could
consist merely of expenditures in promoting the infringed name, then relief would have to be
denied in practically every case of delay." *Internet Specialties W., Inc. v. Milon-DiGiorgio
Enterprises, Inc.*, 559 F.3d 985, 991–92 (9th Cir. 2009) (internal quotation omitted). Instead, a
defendant must show that it invested in the allegedly-infringed mark "as the identity of the
business in the minds of the public." *Id.* A party must "point to specific facts to show that it
has suffered prejudice as a result of the alleged unreasonable delay;" "attorney argument" and
"conclusory statements" are not sufficient to carry a party's burden to show prejudice. *Hokto
Kinoko Co. v. Concord Farms, Inc.*, 810 F. Supp. 2d 1013, 1036 (C.D. Cal. 2011), *aff'd,* 738
F.3d 1085 (9th Cir. 2013).

The court observes that the only evidence Defendant offers in support of its contentions
regarding prejudice is presented in its response to the Cross-Motion. There, Defendant argues
that after it retained Websco, Inc. ("Websco") in 1989 to provide marketing services, Defendant
"expended significant resources in advertising and marketing in the Yellow Pages, Pennsysaver
and other local print publications," and "also expended resources in upgrading its signage by
retrofitting the signs with LED lights, painting the outer sign and pole and refacing the MINI
PUBLIC STORAGE sign." (D. Resp. to Cross-Mot. at 8-9.) The evidence Defendant offers to
support this statement is deposition and declaration testimony from Websco's owner, Benjamin
Wells, which in turn references Defendant's Profit and Loss Statement from January 2014
through 2024. (Dkt. 66-1 (Wells Decl.) ¶ 12.) Defendant's Profit and Loss Statement,
however, reflects no expenditures related to the Yellow Pages in that decade; some expenditures
for the Yellow Book in 2014, 2015, and 2016, but none thereafter; and some expenditures for
the PennySaver in 2014 and 2015, but none thereafter. (Dkt. 60-1.) The court is not persuaded
that this evidence sufficiently demonstrates prejudice from Plaintiff's delay; indeed, the court
observes that Defendant stopped making the very expenditures it cites as prejudice long before
Plaintiff sued. (*See id.*) The court further observes that Defendant "adduces no evidence
regarding . . . the extent to which [its] investment [in its mark], if any, has caused customers to
identify the mark[s] with a particular source of goods. While the court could speculate that

_____

**CIVIL MINUTES – GENERAL**                                              **11**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.: 8:23-cv-01190-FWS-DFM                              Date: October 3, 2024
Title: Public Storage v. Charles D. Burrus Family Trust d/b/a Mini Public Storage

defendant will suffer a loss of goodwill and economic advantage should its use of the marks be
enjoined, it cannot consider such hypothetical harm in the absence of evidence in deciding [the]
motion[s] for summary judgment." *SurgiVision Consultants, Inc. v. SurgiVision, Inc.*, 2011 WL
13214280, at *32 (C.D. Cal. Jan. 31, 2011); *La Quinta Worldwide LLC v. Q.R.T.M., S.A. de
C.V.*, 762 F.3d 867, 879 (9th Cir. 2014) (affirming district court's denial of laches defense when
the alleged infringer "g[ave] no evidence that the period of delay . . . resulted in prejudice to its
efforts to open a hotel in the United States" and "[t]he district court found this absence of
prejudice to be the most important factor in its analysis"); *ImprimisRx, LLC v. OSRX, Inc.*, 2023
WL 8604148, at *13 (S.D. Cal. Dec. 12, 2023) (finding on summary judgment that laches did
not apply even when the party asserting infringement unreasonably delayed in bringing suit
because the alleged infringer "ha[d] not offered any evidence to support a finding of prejudice
due to [the] delay," and "[i]n weighing the equities, without any support for a finding of
prejudice at the posture before the Court, application of laches is inappropriate").[1]

---

[1] In contrast, the court observes that courts finding that laches applied were presented with
substantial evidence supporting prejudice. *See, e.g.*, *Danjaq*, 263 F.3d at 956 (noting that party
presented "unrebutted testimony" regarding evidentiary prejudice in "that many of the relevant
records are missing," and "uncontested evidence" of expectations-based prejudice in "that it
invested approximately 'one billion dollars' in the 'development, production, marketing, [and]
distribution' of the James Bond movies") (cleaned up); *Pinkette Clothing*, 894 F.3d at 1028
(finding the final factor weighed in favor of laches when there was evidence that during the
period of delay, the alleged infringer "built its business by pursuing trade shows and
advertising;" "committed to significant expansion of its warehouse;" and "committed to a
significant expansion of its employment base."); *M.I.B. Grp.*, 2024 WL 3857540, at *19 ("Here,
Defendants have introduced evidence of the type of brand-promotion expenditures which satisfy
the prejudice test. Most significantly for this analysis, MIB Security Group has allegedly "spent
tens of thousands of dollars promoting the name MIB Security Group and its website through
marketing to the public, networking events, swag items (i.e., t-shirts, coffee mugs, key chains,
jackets, etc.), and employee uniforms."); *Harman Int'l Indus.*, 668 F. Supp. 3d at 1044
("Harman introduced two new generations of XTREME speakers, reaping extensive revenues
from those products. This sort of continued investment in a line of products generating
substantial sales is sufficient to demonstrate economic prejudice for purposes of laches.")

---

**CIVIL MINUTES – GENERAL**                                                        12

_____

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES – GENERAL

Case No.: 8:23-cv-01190-FWS-DFM                    Date: October 3, 2024
Title: Public Storage v. Charles D. Burrus Family Trust d/b/a Mini Public Storage

In addition, the court observes that the evidence before the court reflects that Defendant did not invest in the Marks as the identity of Defendant's business, and therefore did not suffer prejudice.  Defendant advertises on its website, but its "website address is www.aaaqualityselfstore.com."  (Dkt. 65 ¶¶ 29, 57; *see* Dkt. 57-1, Ex. 33 (Deposition of Defendant's 30(b)(6) Witness, Ben Wells, "Wells Dep.") at 26; Wells Decl. ¶ 17.)  "Defendant does not own the domain minipublicstorage.com," and when a user "types in the URL www.minipublicstorage.com, a user will be directed to the Mini Public Storage website," which, as stated, is "www.aaaqualityselfstorage.com."  (Dkt. 67 ¶ 7; Wells Dep. at 27.)  Defendant also "advertises with adwords and keywords on search engine," but Defendant does not dispute that it "utilizes generic keywords through Google AdWords" to advertise its business, and "has never used 'PUBLIC STORAGE' as an advertising keyword."  (Dkt. 65 ¶ 30; Dkt. 67 ¶¶ 3-4; Wells Dep. at 76.)  Instead, Defendant uses "pay-per-click" advertising under which it "pick[s] whatever keywords [it] want[s] to use"—which for Defendant include "just generic-storage type of keywords: storage, storage near me, storage unit, storage move-in discounts, that sort of thing"—enters its "monthly ad budget," and the "target radius that [it] want[s] to hit," and "when people click on [its] ads, [it] pay[s]."  (Wells Dep. at 75); *see Internet Specialties W*, 559 F.3d at 992 (affirming district court's holding that the defendant "did not demonstrate prejudice from [the plaintiff's] delay in bringing suit" when the evidence "showed that the vast majority of [the defendant's] advertising took the form of 'pay-per-click' advertisements, through which potential customers are funneled to [the defendant's] website based on their interest in a particular type of service (i.e., internet services in Southern California)," which "advertising creates little to no brand awareness," and defendant "typically did not even include the name ISPWest in the pay-per-click advertisements").  In addition, "Defendant has successfully grown its self-storage business utilizing other brands such as AAA

_____

(record citation omitted); *Move Press, LLC v. Peloton Interactive, Inc.*, 2019 WL 4570018, at *6 (C.D. Cal. Sept. 5, 2019) (finding "substantial expectations-based prejudice" when "Peloton invested more than $180 million in promoting its PELOTON brand and $30 million in researching and developing new products to offer under its PELOTON mark" and "has grown its workforce substantially and has opened approximately 70 retail showrooms across the United States," and that it "made these investments based on its presumed rights in its PELOTON mark").

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES – GENERAL

Case No.: 8:23-cv-01190-FWS-DFM                    Date: October 3, 2024
Title: Public Storage v. Charles D. Burrus Family Trust d/b/a Mini Public Storage

Quality Self Storage," and "operates seven (7) self-storage facilities in Southern California such as 'AAA Quality Self Storage.'" (Dkt. 67 ¶¶ 2, 6.)

In summary, "the *E-Systems* factors are meant to identify" the "elements of delay and prejudice," and courts "in each case . . . must weigh the plaintiff's delay and the resulting prejudice to the defendant to determine whether and to what extent laches bars the requested relief, including a request for an injunction." *Pinkette Clothing*, 894 F.3d at 1027 (cleaned up). In this case, on balance, the court finds that the *E-Systems* factors weigh against finding that laches bars Plaintiff's claims. In reaching this conclusion, the court assigns the greatest weight to the lack of prejudice to Defendant, the direct competition between Plaintiff and Defendant, and the reasons given for Plaintiff's delay. *See M.I.B. Grp.*, 2024 WL 3857540, at *19; *Jarrow Formulas*, 304 F.3d at 839 ("Laches will not apply unless [the defendant] will suffer prejudice from [the plaintiff's] delay if the suit were to proceed."). "Ultimately, the Court finds that it would be the greater injustice to preclude Plaintiff's suit. The Court finds laches inapplicable to the present suit." *M.I.B. Grp.*, 2024 WL 3857540, at *19. Accordingly, Defendant's Motion on the basis of laches is **DENIED**.

"[T]he plain language of Rule 56(c) mandates the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 884 (1990) (citation omitted). "Where no such showing is made, the moving party is entitled to a judgment as a matter of law because the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." *Id.* (cleaned up). Here, as explained, Plaintiff has made a sufficient showing to establish that Defendant cannot show it would suffer prejudice sufficient to prove its laches defense. *See Jarrow Formulas*, 304 F.3d at 839 ("Laches will not apply unless [the defendant] will suffer prejudice from [the plaintiff's] delay if the suit were to proceed."). The Cross-Motion as to laches is therefore **GRANTED**.

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.: 8:23-cv-01190-FWS-DFM                          Date: October 3, 2024
Title: Public Storage v. Charles D. Burrus Family Trust d/b/a Mini Public Storage

### 2. Statute of Limitations

The Ninth Circuit "ha[s] not resolved whether a statute of limitations defense applies to claims under the Lanham Act, which are of 'equitable character.'" *Yeager v. Bowlin*, 495 F. App'x 780, 781 (9th Cir. 2012) (citing *Jarrow Formulas,* 304 F.3d at 836); *see also Magic Kitchen LLC v. Good Things Internat., Ltd.*, 153 Cal. App. 4th 1144, 1156 (2007) ("Federal appellate authority thus is split as to whether a statute of limitations applies to Lanham Act claims or whether, instead, laches is the only applicable timeliness defense. However, we need not resolve the issue."); *ImprimisRx*, 2023 WL 8604148, at *12 ("It is unclear whether the Lanham Act is governed by a limitations period, as opposed to laches."). Indeed, the Ninth Circuit has noted that "[t]he proper interplay between laches and the statute of limitations for Lanham Act claims is somewhat elusive." *Jarrow Formulas,* 304 F.3d at 836. In *Jarrow Formulas*, the Ninth Circuit explained that when a statute lacks a specific statute of limitations, courts "generally presume that Congress intended to 'borrow' the limitations period from the most closely analogous action under state law." *Id.* Consistent with this practice, because "[t]he Lanham Act contains no explicit statute of limitations," the Ninth Circuit "ha[s] stated that § 43(a) borrows a state limitations period as a statute of limitations defense." *Id.* But the Ninth Circuit went on to say that the cases in which the court has borrowed a statute of limitations in the Lanham Act context "failed to consider whether Congress intended that laches, as opposed to the statute of limitations, be the sole timeliness defense available to § 43(a) claims, explaining that "[g]iven the equitable character of § 43(a) actions, Congress might have intended that laches be the sole timeliness bar to suit." *Id.*

Defendant does not identify, and the court has not found, any case in which a court in the Ninth Circuit has granted summary judgment in favor of the alleged trademark infringer on the basis that the statute of limitations had run. (*See generally* D. Mot.; D. Resp. to Cross-Mot.) Instead, courts consistently reject the application of a statute of limitations defense to Lanham Act claims outside the laches context. *See, e.g.*, *Disalle v. Lensi*, 2024 WL 3221732, at *6 (C.D. Cal. May 7, 2024), *reconsideration denied,* 2024 WL 3915208 (C.D. Cal. July 29, 2024) ("Importantly, the four-year statute of limitations is used only to determine if the equitable principle of laches' bars the trademark claims."); *Zox LLC v. Zox*, 2021 WL 4816664, at *3

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES – GENERAL

Case No.: 8:23-cv-01190-FWS-DFM                    Date: October 3, 2024
Title: Public Storage v. Charles D. Burrus Family Trust d/b/a Mini Public Storage

(C.D. Cal. July 12, 2021) (concluding trademark infringement claims were not barred by the statute of limitations, and describing *Jarrow* as deciding that "the Lanham Act principally dispenses relief based on equitable principles, making laches a more appropriate timeliness bar than the state statute of limitations"); *Pak's Trading Eur. B.V. v. Target*, 2018 WL 8333362, at *8 (C.D. Cal. July 5, 2018) ("While Plaintiff and Defendants make arguments about why the statute of limitations should or should not bar Plaintiff's trademark claims, their use of the statute of limitations is not quite right.  In trademark actions, the analogous statute of limitations period is used only to determine if the equitable principle of laches is presumed to apply as a bar to the trademark claims.").  Accordingly, Defendant's Motion on the basis of the statute of limitations defense is **DENIED** and the Cross-Motion as to the statute of limitations defense is **GRANTED**.

### B. Plaintiff's Motion

Plaintiff moves for summary judgment on (1) Plaintiff's claims and (2) nine of Defendant's affirmative defenses.

### 1. Plaintiff's Claims

Plaintiff asserts four claims for relief: (1) trademark infringement and false designation of origin under 15 U.S.C. § 1125(a); (2) trademark infringement under 15 U.S.C. § 1114; (3) unfair competition in violation of California Business & Professions Code §§ 17200 *et seq.*; and (4) unfair competition in violation of California common law.  (Dkt. 1 (Complaint) ¶¶ 36-61.)  Plaintiff moves for summary judgment on all four of these claims.  "The analysis for these claims is substantially the same."  *Inhale, Inc. v. Inhale Health, LLC*, 2021 WL 3264415, at *1 (C.D. Cal. May 13, 2021) (citing *Wecosign, Inc. v. IFG Holdings, Inc.*, 845 F. Supp. 2d 1072, 1079 (C.D. Cal. 2012) ("[T]he Ninth Circuit has consistently held that state common law claims of unfair competition and actions pursuant to California Business and Professions Code § 17200 are substantially congruent to claims under the Lanham Act.")); *see also New W. Corp. v. NYM Co. of California*, 595 F.2d 1194, 1201 (9th Cir. 1979) ("Whether we call the violation infringement, unfair competition or false designation of origin, the test is identical[:] is there a

---

_____

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES – GENERAL

Case No.: 8:23-cv-01190-FWS-DFM                    Date: October 3, 2024
Title: Public Storage v. Charles D. Burrus Family Trust d/b/a Mini Public Storage

'likelihood of confusion?'").  To prevail on these claims, Plaintiff "must prove: (1) that it has a protectible ownership interest in the mark; and (2) that the defendant's use of the mark is likely to cause consumer confusion."  *Network Automation, Inc. v. Advanced Sys. Concepts, Inc.*, 638 F.3d 1137, 1144 (9th Cir. 2011) (internal quotation marks omitted) (citing 15 U.S.C. § 1114; *Dep't of Parks & Recreation v. Bazaar Del Mundo Inc.*, 448 F.3d 1118, 1124 (9th Cir. 2006)).

Here, there is no dispute as to the first issue—whether Plaintiff has a protectible ownership interest in the Marks—and the court finds Plaintiff does have a protectible ownership interest in the Marks.  (*See* P. Mot. at 7-8 (arguing this point and noting that Defendant "does not dispute" it); *see generally* D. Opp. (not disputing this point); P. Reply at 3 (noting the lack of dispute)); *see Network Automation*, 638 F.3d at 1144 (identifying a lack of dispute regarding protectible ownership interest); *see, e.g.*, *Sanrio, Inc. v. Ronnie Home Textile, Inc.*, 2016 WL 5956096, at *9 (C.D. Cal. Jan. 5, 2016) ("Here, Plaintiffs have provided sufficient evidence to show that they are the registered owners of the seven (7) DEI trademarks and five (5) Sanrio trademarks at issue. Without any opposition from Defendants, Plaintiffs' evidence is sufficient to indicate a valid and protectable trademark.") (record citation omitted) (citing *Phillip Morris USA Inc. v. Shalabi*, 352 F. Supp. 2d 1067, 1073 (C.D. Cal. 2004) (similar)).  "This case, therefore, turns on whether [Defendant's] use of [Plaintiff's] trademark is likely to cause consumer confusion.  *Network Automation*, 638 F.3d at 1144-45.

To determine whether a likelihood of consumer confusion exists, courts in the Ninth Circuit "rel[y] on the eight-factor *Sleekcraft* test."  *JL Beverage Co., LLC v. Jim Beam Brands Co.*, 828 F.3d 1098, 1106 (9th Cir. 2016).  The *Sleekcraft* factors include:

> (1) strength of the mark; (2) proximity of the goods; (3) similarity of
> the marks; (4) evidence of actual confusion; (5) marketing channels
> used; (6) type of goods and the degree of care likely to be exercised
> by the purchaser; (7) defendant's intent in selecting the mark; and
> (8) likelihood of expansion of the product lines.

_____

_____

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.: 8:23-cv-01190-FWS-DFM                              Date: October 3, 2024
Title: Public Storage v. Charles D. Burrus Family Trust d/b/a Mini Public Storage

_____

*Ironhawk Techs., Inc. v. Dropbox, Inc.*, 2 F.4th 1150, 1160 (9th Cir. 2021) (citations omitted);
*see also AMF Inc. v. Sleekcraft Boats*, 599 F.2d 341, 348-49 (9th Cir. 1979), *abrogated in part
on other grounds by Mattel, Inc. v. Walking Mountain Prods.*, 353 F.3d 792, 810 n.19 (9th Cir.
2003)).  Although the "*Sleekcraft* factors 'channel the analytical process,' they do not
necessarily dictate a result."  *Pom Wonderful LLC v. Hubbard*, 775 F.3d 1118, 1125 (9th Cir.
2014) (quoting *Entrepreneur Media, Inc. v. Smith*, 279 F.3d 1135, 1141 (9th Cir. 2002)).
Accordingly, "it is 'the totality of facts in a given case that is dispositive.'"  *Id.* (quoting
*Entrepreneur Media*, 279 F.3d at 1141).

### a.  Strength of the Mark

"The stronger a mark—meaning the more likely it is to be remembered and associated in
the public mind with the mark's owner—the greater the protection it is accorded by the
trademark laws."  *Brookfield Commc'ns, Inc. v. W. Coast Ent. Corp.*, 174 F.3d 1036, 1058 (9th
Cir. 1999).  "Trademarks are classified in categories of generally increasing distinctiveness:
(1) generic, (2) descriptive, (3) suggestive, (4) arbitrary, or (5) fanciful."  *Sanrio, Inc.*, 2016 WL
5956096, at *10 (citing *Two Pesos, Inc. v. Taco Cabana, Inc.,* 505 U.S. 763, 768 (1992)).

Defendant argues that "Plaintiff lacks strength in its registered marks" because the Marks
are "generic for goods and services related to renting spaces," that is, "generic of the very
services identified by its trademark registrations."  (D. Opp. at 8-9.)  The court disagrees.  First,
the court finds Plaintiff's "trademark is not [generic or] descriptive because it does not describe
[the services Plaintiff provides].  Instead, it is suggestive—and thus strong enough to warrant
trademark protection—because it requires a mental leap from the mark to the product."
*Brookfield Commc'ns*, 174 F.3d at 1058.  The court makes this finding because Plaintiff's
services are not public storage, but rather private, self-storage.  (*See* P. Reply at 3-4 ("But there
is no nexus between the word 'PUBLIC' and the private, personal self-storage units that
[Plaintiff] rents out to paying customers.  [Plaintiff]'s rental units are not 'public' – they are
neither open nor shared by all people in an area.  Nor are they offered at public buildings, such
as public libraries.").)

_____

_____

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES – GENERAL

Case No.: 8:23-cv-01190-FWS-DFM                    Date: October 3, 2024
Title: Public Storage v. Charles D. Burrus Family Trust d/b/a Mini Public Storage

The court's finding that the Marks are suggestive "does not by itself render the [Marks]
strong because suggestive marks, although stronger than descriptive or generic marks, are still
'presumptively weak.'" *Pom Wonderful*, 775 F.3d at 1126. "But a suggestive mark can be
strengthened by factors such as extensive advertising, length of exclusive use, and public
recognition." *M.I.B. Grp.*, 2024 WL 3857540, at *9 (citing *Entrepreneur Media*, 279 F.3d at
1144). Put another way, "placement within the conceptual distinctiveness spectrum is not the
only determinant of a mark's strength, as advertising expenditures can transform a suggestive
mark into a strong mark, where, for example, that mark has achieved actual marketplace
recognition." *Brookfield Commc'ns*, 174 F.3d at 1058; *see also Sanrio, Inc.*, 2016 WL
5956096, at *10 ("The 'strength' of the trademark is evaluated in terms of its conceptual
strength and commercial strength.").

And there is no dispute that the Marks are very commercially strong. Indeed, Plaintiff
has "provided evidence of the commercial strength of their marks, and their efforts to promote
the products." *Sanrio, Inc.*, 2016 WL 5956096, at *10. Specifically, Plaintiff has submitted
undisputed evidence that Plaintiff "has spent at least $395 million on advertising and marketing
the PUBLIC STORAGE® Marks since the beginning of 2015," that it "is well-known in the
self-storage industry," that it "operates thousands of locations around the United States,
including 444 storage locations in California," and that it "has experienced significant
commercial success and become a leader in the storage facility industry." (Dkt. 65 ¶¶ 9-12.)
"Considering the national scope" and high value of Plaintiff's "sales and marketing efforts," the
court finds that Plaintiff "enjoys sufficient marketplace recognition to render its [Marks]
commercially strong." *Pom Wonderful*, 775 F.3d at 1126.

The court therefore concludes this factor weighs in Plaintiff's favor.

### b. Proximity of the Goods

"Related goods are generally more likely than unrelated goods to confuse the public as to
the producers of the goods." *Brookfield Commc'ns*, 174 F.3d at 1055. "For related goods, the
danger presented is that the public will mistakenly assume there is an association between the

_____

_____

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.: 8:23-cv-01190-FWS-DFM                      Date: October 3, 2024
Title: Public Storage v. Charles D. Burrus Family Trust d/b/a Mini Public Storage

_____

producers of the related goods, though no such association exists." *Sleekcraft*, 599 F.2d at 350.
"The proximity of goods is measured by whether the products are: (1) complementary; (2) sold
to the same class of purchasers; and (3) similar in use and function." *Network Automation*, 638
F.3d at 1150. "[G]oods are proximate if consumers are likely to associate the two product
lines." *M.I.B. Grp.*, 2024 WL 3857540, at *9 (cleaned up). The focus in this factor is "on
whether the consuming public is likely somehow to associate [the alleged infringer's] products
with [the plaintiff]." *Brookfield Commc'ns*, 174 F.3d at 1056.

Here, Plaintiff and Defendant offer identical goods and services in close geographical
proximity. (*See* Dkt. 65 ¶¶ 15-18, 21, 24-27, 40-44; Dkt. 67 ¶ 15.) The court therefore finds
that this factor weighs heavily in favor of a likelihood of confusion. *See Brookfield Commc'ns*,
174 F.3d at 1056 ("The use of similar marks to offer similar products accordingly weighs
heavily in favor of likelihood of confusion."); *see, e.g.*, *La Quinta Worldwide*, 762 F.3d at 875
("The district court found that both La Quinta and Quinta Real offer hotel services, and while
they operate hotels in different tiers of the market, a reasonable customer could conclude that
the two hotel chains are from the same source because some American hotels operate several
different levels of hotels under one umbrella brand.") (internal quotation omitted); *Hokto
Kinoko*, 810 F. Supp. 2d at 1030 (observing that the parties both "sell mushrooms," therefore
finding "[i]t is undeniable that the products have the same uses and functions" and concluding
this factor "favors a finding of likelihood of confusion"); *M.I.B. Grp.*, 2024 WL 3857540, at
*10 (C.D. Cal. July 16, 2024) (finding "this *Sleekcraft* factor supports a likelihood of
confusion" where "the goods in question (security services) are unquestionably complementary
and similar in use and function" and "the Court has little difficulty concluding that consumers
are 'likely to associate' the two services," because "their underlying work is sufficiently similar
that a customer would likely be confused"); *Lerma v. Armijo*, 2017 WL 2233617, at *2 (C.D.
Cal. May 22, 2017) ("'The proximity of the goods are identical, as both parties use the marks in
connection with car clubs."); *mophie, Inc. v. Shah*, 2014 WL 10988347, at *20 (C.D. Cal. Nov.
12, 2014) ("Both products are smartphone cases with a built-in battery. They serve the same
function and have essentially the same design. The nearly identical nature of the goods points
towards a likelihood of confusion."); *Conversive, Inc. v. Conversagent, Inc.*, 433 F. Supp. 2d
1079, 1091 (C.D. Cal. 2006) ("The type of goods and services at issue in this case, computer

_____

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.: 8:23-cv-01190-FWS-DFM                    Date: October 3, 2024
Title: Public Storage v. Charles D. Burrus Family Trust d/b/a Mini Public Storage

software for natural language applications and related services, are the same.  This factor favors a finding of a likelihood of confusion.").  Indeed, the court observes that Defendant does not argue otherwise.  (*See* D. Opp. at 4 (arguing that "several *Sleekcraft* factors weigh against likelihood of confusion here" and not addressing proximity of goods).)

### c.  Similarity of the Marks

The next factor is the similarity of the marks.  "Obviously, the greater the similarity between the two marks at issue, the greater the likelihood of confusion."  *GoTo.com, Inc. v. Walt Disney Co.*, 202 F.3d 1199, 1206 (9th Cir. 2000).  The Ninth Circuit has "developed certain detailed axioms to guide this comparison:" (1) "the marks must be considered in their entirety and as they appear in the marketplace," (2) "similarity is adjudged in terms of appearance, sound, and meaning," and (3) "similarities are weighed more heavily than differences."  *Id.*

The parties offer examples of how their logos are displayed on their places of business:

 

(P. Mot. at 2-3.)

 

(D. Opp. at 10.)

---

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES – GENERAL

Case No.: 8:23-cv-01190-FWS-DFM                    Date: October 3, 2024
Title: Public Storage v. Charles D. Burrus Family Trust d/b/a Mini Public Storage

The court observes that the "appearance, sound, and meaning" of these marks is similar
in many ways.  Most significantly, both contain the words "Public Storage" as the dominant
words, largely displayed in plain text font, with the same pronunciation.  Both use the words
"Public Storage" to convey a meaning related to self-storage services.  Both use the colors blue
and white.  Both are displayed on horizontal rectangles.  In the versions Plaintiff offers, both
contain a smaller portion that contains other script.  The court acknowledges they are different
in other ways.  The script in the smaller portion of each is different—"PS" for Plaintiff, "Mini"
for Defendant—though "[t]he addition of a descriptive word can hardly create a meaningful
distinction between two otherwise identical marks."  *M.I.B. Grp.*, 2024 WL 3857540, at *10.
Plaintiff uses orange, whereas Defendant does not; Defendant uses red, whereas Plaintiff does
not.  But again, in this analysis, "similarities are weighed more heavily than differences,"
*GoTo.com*, 202 F.3d at 1206.  And the differences the court observes do not prevent the court
from finding that the marks are substantially similar when evaluated for appearance, sound, and
meaning.  *See La Quinta Worldwide*, 762 F.3d at 876 (finding district court's conclusion that
marks were similar was not clearly erroneous based on, among other factors, an identical
dominant word: 'Quinta'"); *Lerma*, 2017 WL 2233617, at *2 ("Next, the court finds that the
marks have a high degree of similarity. STYLISTICS and SLA (STYLISTICS LOS
ANGELES) are distinguished in sight, sound, and meaning only by the fact that the latter mark
has appended a geographic term to an otherwise identical mark.  This degree of similarity
counsels in favor of consumer confusion."); *Conversive, Inc.*, 433 F. Supp. 2d at 1091 ("Here,
the marks are phonetically and visually very similar.  They all begin with the element 'convers,'
and the CONVERSAGENT and CONVERSIVE AGENT both contain the elements 'convers'
and 'agent' in the same order."); *M.I.B. Grp.*, 2024 WL 3857540, at *10 ("The marks in
question are unquestionably similar when evaluated for sight, sound, and meaning.  This factor
strongly weighs in favor of finding a likelihood of confusion.").

Moreover, the court observes that its mandate to "consider[ the Marks] in their entirety
and as they appear in the marketplace," *GoTo.com*, 202 F.3d at 1206, in this case means the
court must consider the fact that often, when people encounter the parties' names, they are
written in plain text.  *See, e.g.*, *SurgiVision Consultants*, 2011 WL 13214280, at *17 ("In
judging similarity, trademarks should be considered as they are encountered in the marketplace,

---

**CIVIL MINUTES – GENERAL**                                                                    22

_____
UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES – GENERAL

Case No.: 8:23-cv-01190-FWS-DFM                    Date: October 3, 2024
Title: Public Storage v. Charles D. Burrus Family Trust d/b/a Mini Public Storage

taking into account the normal circumstances surrounding purchase of the type of goods they
represent.").  In particular, the evidence shows that consumer transactions for the parties'
services often occur online, and therefore often people evaluating the parties' marks see only
the words "Public Storage" (for Plaintiff) and "Mini Public Storage" (for Defendant) with no
other distinguishing features.  (*See* P. Reply at 5; *see, e.g.*, Dkt. 65 ¶ 39.)  Because the
differences the court observes exist only in certain situations in which the public sees the marks,
the court weighs those differences even less.  *See GoTo.com*, 202 F.3d at 1206.

Finally, the court notes that "the amount of similarity required to support a likelihood of
confusion declines as the services themselves become increasingly similar." *La Quinta
Worldwide*, 762 F.3d at 876 (citation omitted).  Similarly, "[f]or related goods, the danger
presented is that the public will mistakenly assume there is an association between the
producers of the related goods, though no such association exists. The more likely the public is
to make such an association, the less similarity in the marks is requisite to a finding of
likelihood of confusion. Thus, less similarity between the marks will suffice when the goods are
complementary, the products are sold to the same class of purchasers, or the goods are similar
in use and function." *Sleekcraft*, 599 F.2d at 350.  As explained, Plaintiff and Defendant offer
identical goods and services to the same class of purchasers in very close geographical
proximity.  (*See* Dkt. 65 ¶¶ 15-18, 21, 24-27, 40-44; Dkt. 67 ¶ 15.)  Accordingly, the court finds
the limited differences between the marks have even lower significance here.

Under all of the circumstances presented here, the court finds the similarity of the parties'
marks weighs heavily in favor of a finding of likelihood of confusion.  *See La Quinta
Worldwide*, 762 F.3d at 876.

### d.  Evidence of Actual Confusion

"Evidence of actual confusion is strong evidence that future confusion is likely." *Off.
Airline Guides, Inc. v. Goss*, 6 F.3d 1385, 1393 (9th Cir. 1993); *see also Clicks Billiards, Inc. v.
Sixshooters, Inc.*, 251 F.3d 1252, 1265 (9th Cir. 2001) (stating that "evidence of actual
confusion . . . constitutes persuasive proof that future confusion is likely").  When it comes to

_____

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.: 8:23-cv-01190-FWS-DFM                              Date: October 3, 2024
Title: Public Storage v. Charles D. Burrus Family Trust d/b/a Mini Public Storage

instances of actual confusion, "[t]he relevant confusion is whether members of the buying
public would mistakenly purchase one party's product because they believed it to be the other
party's product." *M.I.B. Grp.*, 2024 WL 3857540, at *11.

Importantly, "the absence of such evidence [of actual confusion] is not dispositive."
*Goss*, 6 F.3d at 1393. Indeed, "[p]roving actual confusion is difficult," and courts "have often
discounted such evidence because it was unclear or insubstantial." *Sleekcraft*, 599 F.2d at 352.
For this reason, evidence of even small numbers of instances of actual confusion can be
persuasive. *See, e.g.*, *Entrepreneur Media*, 279 F.3d at 1151 (noting that a trier-of-fact may
find evidence of even just one instance of actual confusion "quite significant," and concluding
"[b]ecause on this record a reasonable juror would have to find that one of EntrepreneurPR's
clients was actually confused, this factor weighs in favor of summary judgment for EMI");
*Sanrio, Inc.*, 2016 WL 5956096, at *11 & n.9 (finding "[t]his factor weighs in Plaintiffs' favor"
because "Defendants' customers specifically requested merchandise bearing Plaintiffs'
Characters, which evidences actual confusion from the public," even though "Plaintiffs only
provide proof of actual confusion from a single customer" and "the record of evidence of
confusion is not strong," including because "Defendants fail[ed] to provide any evidence to the
contrary"). And courts have no trouble finding a likelihood of confusion even without any
evidence of actual confusion at all. *See, e.g.*, *Hokto Kinoko*, 810 F. Supp. 2d at 1030 ("While
there is no evidence of actual confusion in the record here, the Court finds that the lack of
evidence of actual confusion is not a material fact."); *Lerma*, 2017 WL 2233617, at *2 ("The
evidence does not speak to instances of actual confusion," but "[n]onetheless, the court finds
that Plaintiff has adequately substantiated his claim of likelihood of confusion."). Again, the
point of the *Sleekcraft* factors is to determine whether there is a likelihood of consumer
confusion, so "[e]vidence of actual confusion . . . add[s] weight towards the conclusion that
actual confusion is likely." *mophie, Inc.*, 2014 WL 10988347, at *20.

Here, Plaintiff has submitted undisputed evidence of actual confusion. For example,
"[o]n May 19, 2022, one of [Plaintiff]'s customers posted to the [Defendant's] listing on the
Better Business Bureau website about her delinquent [ ] bill [with Plaintiff]." (Dkt. 65 ¶ 49.)
"Ben Wells, on behalf of Websco Properties, responded to the May 19, 2022 posting on

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.: 8:23-cv-01190-FWS-DFM                    Date: October 3, 2024
Title: Public Storage v. Charles D. Burrus Family Trust d/b/a Mini Public Storage

[Defendant]'s Better Business Bureau listing," stating "that the posting was brought 'against the wrong storage facility' and that '[Plaintiff] is a different company.'" (*Id.* ¶ 50.)  Additionally, "[o]n March 23, 2018, one of [Plaintiff]'s existing customers emailed both invoice@customercare.publicstorage.com ([Plaintiff]'s support)" with a cc to "manager@selfstorage-stanton.com ([Defendant] in Stanton).  In the email the person stated that she had called [Plaintiff]'s facility located at 10792 Knott Ave, Stanton, CA." (*Id.* ¶ 51.)  Defendant responded to the email, stating "we are not associated with [Plaintiff]." (D. Opp. at 11-12.)  And a June 3, 2021, Google search for Plaintiff's "customer-service information yielded a search results page answering the question 'Can you pay Public Storage with cash?' with information from and a link to [Defendant]'s website." (Dkt. 65 ¶ 52.)  Plaintiff has received inquiries from people looking for Defendant, and Defendant has received inquiries from people looking for Plaintiff. (*Id.* ¶¶ 47, 53-54.)[2]

Defendant argues these instances do not "amount[] to actual confusion," and notes that "in the 40+ years that Plaintiff and Defendant have co-existed, there have been [only] four (4) instances of alleged confusion." (D. Opp. at 11-12.)  The court is not persuaded that this factor weighs against a finding of likelihood of confusion.  However, in an abundance of caution, the court will consider the actual confusion factor a neutral factor in its analysis.  *See M.I.B. Grp.*, 2024 WL 3857540, at *12 ("However, as Defendants point out, Wilkerson's declaration only describes a single incident of mistaken communications which could be easily rectified.  Such misdirected communications are not the sort of actual confusion that this Sleekcraft factor is meant to capture.") (citing *Cohn v. Petsmart, Inc.*, 281 F.3d 837, 842 n.7 (9th Cir. 2002); *Miss*

---

[2] Defendant argues that "[t]he above instances [of purported actual confusion] are vague and inadmissible hearsay and should not be considered by this Court." (D. Opp. at 5.)  The court disagrees.  "'Hearsay' means a statement that . . . a party offers in evidence to prove the truth of the matter asserted in the statement." Fed. R. Evid. 801(c).  Plaintiff does not offer the statements purportedly confused consumers made for the truth of the matter asserted in the consumers' statements, but rather for the purpose of showing consumer confusion.  And "the majority of circuit courts that have considered this issue have relied on the evidence rules cited by plaintiff and found that such evidence is admissible." *Conversive, Inc.*, 433 F. Supp. 2d at 1091; (*see* P. Reply at 7-8 (collecting cases reaching the same conclusion)).

**CIVIL MINUTES – GENERAL**                                    **25**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.: 8:23-cv-01190-FWS-DFM                    Date: October 3, 2024
Title: Public Storage v. Charles D. Burrus Family Trust d/b/a Mini Public Storage

*World (UK) Ltd. v. Mrs. America Pageants, Inc.*, 856 F.2d 1445, 1451 (9th Cir. 1988) (explaining that, standing alone, evidence showing inquiries about the relatedness of two parties is not sufficient to show actual confusion)).

### e.  Marketing Channels Used

"Convergent marketing channels increase the likelihood of confusion." *Sleekcraft*, 599 F.2d at 353.  "Therefore, the courts examine the proximity of the marketing channels to one another and whether direct competition exists." *Nutri/Sys., Inc. v. Con-Stan Indus., Inc.*, 809 F.2d 601, 606 (9th Cir. 1987).  "In assessing marketing channel convergence, courts consider whether the parties' customer bases overlap and how the parties advertise and market their products." *Pom Wonderful*, 775 F.3d at 1130.

Here, Plaintiff and Defendant "are in direct competition." *Hokto Kinoko*, 810 F. Supp. 2d at 1030; (Dkt. 65 ¶¶ 43-44; Dkt. 67 ¶ 15).  And "[i]n addition to the relatedness of products," Plaintiff and Defendant use similar "marketing and advertising facilit[ies], a factor that courts have consistently recognized as exacerbating the likelihood of confusion." *Brookfield Commc'ns*, 174 F.3d at 1057.  For example, both Plaintiff and Defendant advertise on Yelp.com, the Yellow Pages, and Facebook; by using adwords and keywords on search engines such as Google; and by displaying signs at their places of business.  (Dkt. 65 ¶¶ 23, 29-34.)  The court therefore finds this factor favors a finding of likelihood of confusion.  *Hokto Kinoko*, 810 F. Supp. 2d at 1030 (finding "this factor also favors a finding of likelihood of confusion" when the parties were "in direct competition" because they both "directly market their mushrooms to grocery stores"); *Brookfield Commc'ns*, 174 F.3d at 1057 ("In addition to the relatedness of products, West Coast and Brookfield both utilize the Web as a marketing and advertising facility, a factor that courts have consistently recognized as exacerbating the likelihood of confusion."); *M.I.B. Grp.*, 2024 WL 3857540, at *13 (finding that "some shared marketing channels," including "similar websites advertising their services" with "similar styles and designs" and advertis[ing] via branded merchandise," "slightly supports a likelihood of confusion"); *mophie, Inc.*, 2014 WL 10988347, at *20 (finding the parties' "products are sold through similar marketing channels" when the plaintiff "provided evidence that it relies on

_____

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.: 8:23-cv-01190-FWS-DFM                    Date: October 3, 2024
Title: Public Storage v. Charles D. Burrus Family Trust d/b/a Mini Public Storage

═══════════════════════════════════════════════════════════════════

online forums and websites to promote its juice pack products" and the defendant "sold its product through LivingSocial, an online forum and website"); *Lerma*, 2017 WL 2233617, at *2 ("Finally, the evidence suggests at least some overlapping marketing channels as both marks are used online to advertise the competing car clubs."); *Conversive, Inc.*, 433 F. Supp. 2d at 1092 ("Here, the parties sell the same goods through the same marketing channels, via the Internet and telephone marketing, to the same potential customers.  As such, these potential consumers could very easily mistakenly believe that the goods come from a common source.  This factor favors a finding of a likelihood of confusion.").  Indeed, the court observes that Defendant does not argue otherwise.  (*See* D. Opp. at 4 (arguing that "several *Sleekcraft* factors weigh against likelihood of confusion here" and not addressing marketing channels).)

### f.  Type of Goods and the Degree of Care Likely to be Exercised by the Purchaser

"Likelihood of confusion is determined on the basis of a 'reasonably prudent consumer.'" *Brookfield Commc'ns*, 174 F.3d at 1060. "What is expected of this reasonably prudent consumer depends on the circumstances. We expect him to be more discerning—and less easily confused—when he is purchasing expensive items, and when the products being sold are marketed primarily to expert buyers. . . . On the other hand, when dealing with inexpensive products, customers are likely to exercise less care, thus making confusion more likely." *Id.* (citations omitted).

Plaintiff provides evidence that the parties' goods and services are relatively inexpensive, costing between $70 and $340 per month, and that the transaction to rent a self-storage unit occurs "fairly quickly," even in the span of "10-15 minutes."  (P. Mot. at 14 (citing Dkt. 65 ¶¶ 20, 28, 39).)  The court observes Defendant does not address this factor in its Opposition. (*See* D. Opp. at 4 (arguing that "several *Sleekcraft* factors weigh against likelihood of confusion here" and not addressing the degree of expected consumer care).)  And the court finds that it is "unlikely that consumers would exercise a high degree of care when making their [self-]storage decisions." *Nolan LLC v. TDC Int'l Corp.*, 2009 WL 10680588, at *6 (E.D. Mich. Mar. 31, 2009).  Indeed, people purchasing self-storage "typically do not need to possess special

_____

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.: 8:23-cv-01190-FWS-DFM                           Date: October 3, 2024
Title: Public Storage v. Charles D. Burrus Family Trust d/b/a Mini Public Storage

expertise and, where marks are sufficiently similar, the likelihood of confusion is high," *id.*, especially where, as here, the parties operate in such close geographical proximity. The court therefore concludes that this factor weighs in favor of finding a likelihood of consumer confusion.

### g. Defendant's Intent in Selecting the Mark

The next factor is Defendant's intent in selecting the mark. *Sleekcraft*, 599 F.2d at 354. "This factor favors the plaintiff where the alleged infringer adopted his mark with knowledge, actual or constructive, that it was another's trademark." *Brookfield Commc'ns*, 174 F.3d at 1059. Indeed, "[w]hen the alleged infringer knowingly adopts a mark similar to another's, reviewing courts presume that the defendant can accomplish his purpose: that is, that the public will be deceived." *Network Automation*, 638 F.3d at 1153 (quoting *Sleekcraft*, 599 F.2d at 354).

Here, the parties appear to agree that this factor is neutral because there is no evidence regarding Defendant's intent in selecting the name "Mini Public Storage." (P. Mot. at 14; D. Opp. at 17; P. Reply at 9-10.) The court also agrees. But in any case, this factor is of "minimal importance," *GoTo.com, Inc.*, 202 F.3d at 1208, because "an intent to confuse customers is not required for a finding of trademark infringement." *Brookfield,* 174 F.3d at 1059. It seems very possible to the court that Defendant knew about Plaintiff's Marks when it began using Defendant's mark. *See Brookfield Commc'ns*, 174 F.3d at 1059 (referring to relevant knowledge of the allegedly infringed mark as either "actual or constructive"). But even if the court "concluded that [Defendant] was as innocent as a fawn with *no* intent to copy or appropriate [Plaintiff's Marks], it would prove nothing since no such intent is necessary to demonstrate a likelihood of confusion." Accordingly, the court considers this factor neutral to its analysis. *See Brookfield Commc'ns*, 174 F.3d at 1059-60 ("Here, West Coast's intent does not appear to bear upon the likelihood of confusion because it did not act with such an intent from which it is appropriate to infer consumer confusion.").

---

_____

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.: 8:23-cv-01190-FWS-DFM                    Date: October 3, 2024
Title: Public Storage v. Charles D. Burrus Family Trust d/b/a Mini Public Storage

### h.  Likelihood of Expansion of the Product Lines

"Inasmuch as a trademark owner is afforded greater protection against competing goods, a 'strong possibility' that either party may expand his business to compete with the other will weigh in favor of finding that the present use is infringing." *Sleekcraft*, 599 F.2d at 354. However, "[t]he likelihood of expansion in product lines factor is relatively unimportant where two companies already compete to a significant extent." *Brookfield Commc'ns*, 174 F.3d 1036, 1060 (9th Cir. 1999)

Here, it is undisputed that "Defendant has no intention of expanding its self-storage business using the name Mini Public Storage." (Dkt. 63 ¶ 12.)  But "[b]ecause the parties are direct competitors, this factor carries no analytical significance." *M.I.B. Grp.*, 2024 WL 3857540, at \*14; *see also Network Automation*, 638 F.3d at 1153 ("Where two companies are direct competitors, this factor is unimportant."); *Hokto Kinoko*, 810 F. Supp. 2d at 1031 ("However, where, as here, the parties already compete to a significant degree because they sell related products and use similar marketing channels, the Court finds that this factor is relatively unimportant to the likelihood of confusion analysis."); *Sanrio*, 2016 WL 5956096, at \*11 ("Because Plaintiffs and Defendants compete with one another in providing similar soft goods, the Court declines to evaluate this issue."); *cf. Conversive, Inc.*, 433 F. Supp. 2d at 1093 ("This factor favors a finding of a likelihood of confusion because the product lines are already similar.").

### i.  Weighing the *Sleekcraft* Factors

The *Sleekcraft* "factors should not be rigidly weighed; [courts] do not count beans. Rather, the factors are intended to guide the court in assessing the basic question of likelihood of confusion." *Dreamwerks Prod. Grp., Inc. v. SKG Studio*, 142 F.3d 1127, 1129 (9th Cir. 1998) (internal quotations omitted); *see SurgiVision Consultants, Inc.*, 2011 WL 13214280, at \*16 ("The court need not address all of the factors, nor must plaintiffs establish that each weighs in their favor to establish likelihood of confusion." (collecting cases); *Pom Wonderful*, 775 F.3d at 1132 ("Sheer numerosity of *Sleekcraft* factors, however, is not by itself dispositive

_____

**CIVIL MINUTES – GENERAL**                                                                 **29**

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.: 8:23-cv-01190-FWS-DFM                                      Date: October 3, 2024
Title: Public Storage v. Charles D. Burrus Family Trust d/b/a Mini Public Storage

of the ultimate likelihood-of-confusion determination."); *M.I.B. Grp.*, 2024 WL 3857540, at
\*14 ("The ⚑*Sleekcraft* factors are not mechanically tallied.").

Here, having weighed each *Sleekcraft* factor, the court has no trouble concluding, on
balance, that there is a likelihood of confusion. Five of the factors—the strength of the mark,
the proximity of the goods, the similarity of the marks, marketing channels used, the degree of
care likely to be exercised—favor Plaintiff; three of the factors—evidence of actual confusion,
Defendant's intent, and likelihood of product line expansion—are neutral; and none of the
factors favor Defendant. *See Pom Wonderful*, 775 F.3d at 1132 (making similar observations in
weighing the *Sleekcraft* factors); *M.I.B. Grp.*, 2024 WL 3857540, at \*15 ("Not a single
*Sleekcraft* factor weighs against a likelihood of confusion; all factors either support a likelihood
of confusion or are neutral."). "Pursuant to this analysis, no reasonable jury could fail to find a
likelihood of confusion here. Accordingly, this case is one of the rare cases where a finding of
likelihood of confusion is appropriate at the summary judgment stage." *M.I.B. Grp.*, 2024 WL
3857540, at \*15; *see, e.g.*, *Entrepreneur Media*, 279 F.3d at 1140 ("Because of the intensely
factual nature of trademark disputes, summary judgment is generally disfavored in the
trademark arena."); *JL Beverage Co., LLC v. Jim Beam Brands Co.*, 828 F.3d 1098, 1105 (9th
Cir. 2016) (similar); *see also, e.g.*, *Dean v. Kaiser Found. Health Plan, Inc.*, 2022 WL
18938253, at \*6 (C.D. Cal. Nov. 22, 2022) (granting summary judgment in favor of party
asserting infringement); *Sanrio, Inc.*, 2016 WL 5956096, at \*11 ("The distribution of the
*Sleekcraft* factors favors Plaintiffs. . . . Accordingly, there is no triable issue of the likelihood of
confusion, and summary judgment is **GRANTED** in Plaintiffs' favor and against Doeing and
Pan on the claim of trademark infringement" and "and on the claims for federal and state unfair
competition."); *mophie, Inc.*, 2014 WL 10988347, at \*21 (granting summary judgment in favor
of party asserting infringement even with "insufficient evidence currently in the record to
evaluate degree of care, defendant's intent, and likelihood of expansion" because "[e]ven
without evaluating these remaining, less heavily-weighted *Sleekcraft* factors, the evidence is
sufficient to determine that there is no genuine dispute of material fact as to likelihood of
confusion between the two products"); *Conversive, Inc.*, 433 F. Supp. 2d at 1093 ("[S]ummary
judgment in favor of plaintiff is granted as to its first cause of action for trademark
infringement."). The court therefore **GRANTS** Plaintiff's Motion as to Plaintiff's claims.

---

_____

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES – GENERAL

Case No.: 8:23-cv-01190-FWS-DFM                    Date: October 3, 2024
Title: Public Storage v. Charles D. Burrus Family Trust d/b/a Mini Public Storage

═══════════════════════════════════════════════

### 2.  Defendant's Affirmative Defenses Other than Laches and Statute of Limitations

Defendant's answer contains twenty-four affirmative defenses.  (Dkt. 25 ("Answer") at 8-12.)  The court has already addressed Defendant's affirmative defenses of state of limitations and laches, which are the second and third affirmative defenses.  *See* Section III.A., *supra*; (Answer at 8).  In Plaintiff's Motion, Plaintiff moves for summary judgment in Plaintiff's favor on Defendant's fourth (unclean hands), sixth (res judicata and/or collateral estoppel), tenth (no impairment or harm), eleventh (de minimis), thirteenth (abandonment), sixteenth (acts by Plaintiff), seventeenth (lawful conduct), twenty-first (illegal/unenforceable restraint), and twenty-third (consent) affirmative defenses.[3]  (P. Mot. at 15-21.)  The entirety of Defendant's Opposition to Plaintiff's Motion on this basis are these statements:

_____

[3] Defendant's fourth affirmative defense asserts that "[t]he Complaint, in whole or in part, is barred by the doctrine of unclean hands."  (Answer at 9.)  Defendant's sixth affirmative defense asserts that "[t]he complaint is barred by res judicata, and/or collateral estoppel."  (*Id.*)  Defendant's tenth affirmative defense asserts that "[n]o impairment or harm to Plaintiff's mark exists."  (*Id.*)  Defendant's eleventh affirmative defense asserts that "[t]he Complaint fails, in whole or in part, because any alleged use of Plaintiff's trademark is de minimis."  (*Id.*)  Defendant's thirteenth affirmative defense asserts that "Plaintiff has abandoned use of the mark, the mark is generic, the mark lacks secondary meaning, and/or an implied license exists."  (*Id.* at 10.)  Defendant's sixteenth affirmative defense asserts that "Plaintiff is barred from obtaining any and all relief sought by the Complaint because their alleged injuries, if any, were proximately caused in whole or in part by the acts or omissions of Plaintiff."  (*Id.*)  Defendant's seventeenth affirmative defense asserts that "[t]he conduct of Defendant alleged in the Complaint was lawful and/or privileged."  (*Id.*)  Defendant's twenty-first affirmative defense asserts that the Complaint "fails, in whole or in part, because the alleged restrictions on Defendant's freedoms illegally restrain competition, restrict employees from free movement and businesses and individuals from free competition, and are unenforceable and in violation of the law, including without limitation Section 16600 of California's Business & Professions

_____

_____

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES – GENERAL

Case No.: 8:23-cv-01190-FWS-DFM                    Date: October 3, 2024
Title: Public Storage v. Charles D. Burrus Family Trust d/b/a Mini Public Storage

═══════════════════════════════════════════════════════════════════

The fact that Plaintiff had knowledge of Defendant's use of the name
Mini Public Storage for decades, addressed the issue with Defendant
and its counsel on several occasions, and elected not to timely act on
their rights, not only entitles Defendant to assert these defenses, but
renders them valid and warranted in light of the circumstances.

Plaintiff's failure to act for decades, led Defendant to believe there
was no wrongdoing on its part.  Even after Plaintiff wrote to
Defendant challenging their use of the name Mini Public Storage and
Defendant thereafter retained counsel to respond to Plaintiff's
allegation, Plaintiff decided to take no action at those times.  Wells
Dec., ¶¶7-10.  These facts support Defendant's Affirmative Defenses
[listed above].

Plaintiff failed to assert their rights when they admittedly had
knowledge of Defendant's use of the name in January 1979, yet took
no action.  This essentially makes valid Defendant's affirmative
defenses [listed above].

(D. Opp. at 20-21.)

"The burden to prove these affirmative defenses at trial is on Defendant; thus, at the
summary judgment stage, Plaintiff may simply point to an absence of evidence supporting the
affirmative defenses."  *Aeros Aeronautical Sys. Corp. v. United States*, 2016 WL 10516020, at
*7 (C.D. Cal. June 20, 2016); *see Clark v. Cap. Credit & Collection Servs., Inc.*, 460 F.3d 1162,
1177 (9th Cir. 2006) (noting that the defendant has the burden of proof on affirmative defenses
at the summary judgment stage).  Defendant "has the initial burden of establishing, with

_____

Code."  (*Id.* at 11.)  Defendant's twenty-third affirmative defense asserts that the Complaint "is
barred on the ground that at all times alleged in the Complaint, Plaintiff expressly or impliedly
assented to, ratified or concurred with the conduct alleged in the Complaint."  (*Id.* at 12.)

_____

_____

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES – GENERAL

Case No.: 8:23-cv-01190-FWS-DFM                    Date: October 3, 2024
Title: Public Storage v. Charles D. Burrus Family Trust d/b/a Mini Public Storage

_____

admissible evidence, a *prima facie* case for its defenses." *McNicholas v. Loyola Marymount Univ.*, 2018 WL 5903903, at *3 (C.D. Cal. June 21, 2018).

The court finds that Plaintiff has met its burden to point to an absence of evidence supporting Defendant's affirmative defenses, and Defendant has failed to carry its burden to support its affirmative defenses. *See Aeros Aeronautical Sys. Corp.*, 2016 WL 10516020, at *7; *Clark*, 460 F.3d 1162, 1177; *McNicholas*, 2018 WL 5903903, at *3. Defendant's briefing makes clear that the challenged affirmative defenses are founded on the same theory as Defendant's laches and statute of limitations defenses, (D. Opp. at 20-21), but the court has already explained that there is an absence of evidence supporting those defenses. *See* Section III.A., *supra*. Defendant offers no further argument or evidence supporting these defenses, and "do[es] not identify any specific evidence or discuss how any evidence in the record establishes any affirmative defense asserted." *RG Abrams Ins. v. L. Off. of C.R. Abrams*, 2024 WL 692715, at *7 (C.D. Cal. Jan. 22, 2024). Accordingly, Plaintiff's Motion as to Defendant's affirmative defenses other than laches and the statute of limitations is **GRANTED**.

### IV.    Disposition

For the reasons stated above, the court **DENIES** Defendant's Motion and **GRANTS** Plaintiff's Motion and Cross-Motion.

The court **ORDERS** Plaintiff to submit a proposed judgment consistent with this order on or before **October 8, 2024.** Defendant may file a response to Plaintiff's proposed judgment, not to exceed five pages, on or before **October 11, 2024.** The court will then issue an appropriate judgment.

Initials of Deputy Clerk:  mku

_____